IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Sylvester Shockley                    )
                    Petitioner        )
                                      )                    06 - 211
        v.                            )          Case No. _____
                                      )
Stanley Taylor, Commissioner          )
Department of Corrections;            )
Thomas Carroll, Warden                )
Delaware Correctional Center;         )
And Carl Danberg, Acting              )
Attorney General, Department of       )
Justice, State of Delaware            )
                    Respondents       )

FILED

MAR 30 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD scanned

MEMORANDUM IN SUPPORT OF 2241 PETITION FOR A
WRIT OF HABEAS CORPUS OF SYLVESTER SHOCKLEY

I.    INTRODUCTION

COMES Now the Petitioner, Sylvester Shockley, pro se, pursuant to **28 U.S.C. Section 2241**, and files this Memorandum in support of his petition for a writ of habeas corpus for violation of Federal Constitutional, Statutory and/or other laws, and states the following:

Article 1 of the **United States Constitution** provides that neither Congress nor any State shall pass an ex post facto law. **U.S. Const. Art. 1, Section 9, cl. 3; U.S. Const. Art. 1, Section 10, cl. 1.** See **Helman v. State, 784 A.2d 1058, 1075 (Del. 2001); Snyder v. Andrews, 708 A.2d 237, 248 (Del. 1998); State v. Cohan, 604 A.2d 846, 852 (Del. 1992)**. The interpretation of this clause largely derives from **Calder v. Bull, 3 U.S. (3 Dall.) 386 (1798)**, in which the United States Supreme Court first considered the scope of the ex post facto prohibition. See **Miller v. Florida, 482 U.S. 423 (1987)**; see also **Collins v. Youngblood, 497 U.S. 37 (1990)**. The clause prohibits, inter alia, the retroactive application of a law that "inflicts a greater punishment than the

law annexed to the crime, when committed." **Calder, 3 U.S. at 390**; see also **Helman, 784 A.2d at 1076**.

## II.     BACKGROUND

The Grand Jury indicted Sylvester Shockley in September, 1981 charging him with First Degree Rape, First Degree Kidnapping, and Third Degree Assault; see **Super. Ct. ID 81003194DI**. Petitioner entered a guilty plea in December 1981 to First Degree Rape, and he was sentenced in March 1982 to Life imprisonment with [the] *possibility of parole.* On May 30, 2003 the Delaware Supreme Court issued an Opinion in **Crosby v. State, 824 A.2d 894 (Del. 2003)**, holding that a life sentence for crimes committed prior to June 30, 1990 be calculated as a 45-year term for purposes of determining qualification for conditional release.  With the accrual of good time or merit credits, that holding appeared to permit those sentenced to life in prison prior to the enactment of the Truth In Sentencing Act of 1989, to be released well in advance of the 45-year maximum release date, because good time and merit credits advances the maximum release date.  See also, **Evans v. Kent County, Del., 2004 Del. Lexis 545 (Del., en banc, Nov. 23, 2004)**, holding that the Courts' decision in **Crosby** requires that **Evans'** life sentence be calculated as a 45-year term for purposes of determining his qualification for conditional release.   Petitioner subsequently wrote to the Department of Corrections Records Division Administrator, Ms. Rebecca McBride.  In a Memo dated December 4, 2004 she responded by stating that "the Department of Corrections is waiting for instructions from the Attorney General's Office before she can calculate Petitioners' life sentence in accordance to the directive from the State Supreme Court."   On December 7, 2004 Petitioner sent a follow-up request to the Warden, Thomas Carroll, in this regard.  The Warden did not respond.  On January 14, 2005 Petitioner filed a Complaint in Proceedings for Extraordinary Writ of Mandamus or Alternative Rule 35(a) to correct an Illegal Sentence in the Superior Court of Delaware.  After two months without any response from the Superior Court, Petitioner filed an additional complaint in proceedings for Extraordinary Writ of Mandamus on March 23, 2005 to the Supreme Court of Delaware.  Then, on or about April 13, 2005 the Chief of Appeals Division for the Department of Justice, Loren C. Meyers filed an Answer and Motion to Dismiss.

Subsequently, on May 2, 2005 the State Supreme Court issued an Order that determined that **Shockley's** petition was still pending for decision before the Superior Court and ordered his Petition for a Writ of Mandamus in the Supreme Court dismissed as moot. Consequently, on May 6, 2005 the Superior Court issued an Order sua sponte, which summarily dismissed the petition for mandamus or alternative correction of sentence relief on the basis that "the sentence is appropriate for reasons stated at the time of sentencing, and that no additional information has been provided to the Court which would warrant a reduction or modification of sentence." On May 18, 2005 Petitioner filed a Notice of Appeal of said Order to the Supreme Court of Delaware. Then on July 5, 2005 Petitioner filed an Opening Brief and Appendix to the Supreme Court of Delaware. Subsequently, on or about July 15, 2005 Chief of Appeals Division Justice Department, Attorney Loren C. Meyers filed a Motion to Affirm. Finally, on August 24, 2005 the State Supreme Court issued an Order affirming the judgment of the Superior Court.

### III.    ANALYSIS

Petitioner, Sylvester Shockley was convicted and sentenced pursuant to a plea Agreement nearly 25 years ago, and has challenged the legality of his conviction or sentence in this proceeding for issuance of a writ of habeas corpus pursuant to **28 U.S.C. Section 2241** based upon a fundamental change in the law in violation of Federal Constitution, Statutory or other law, **Id. Section 2241 (c)(3)**. Petitioner alleges violations of his rights to due process, equal protection and the right to be free from violations of the ex post facto clause of the United States Constitution. He claims that his constitutional rights have been violated because of executive, legislative and judicial bias which prompted the Delaware Legislature to enact a bill, namely **House Bill 31**, specifically declaring the Delaware Supreme Courts' holding in **Evans v. Kent County, Del., 2004 Del. Lexis 545 (Del., en banc, Nov. 23, 2004**, to be "Null and Void." The original **Evans** holding sparked a media frenzy and an uproar in the State Legislature and by the Attorney General and the Governor, over the concern that a wave of over two-hundred violent criminals would be set loose upon the good people of the State of Delaware, and

3

although it has nothing to do with the rule of law, demonstrates the propensity of mob rule to disregard the liberties enshrined in our most sacred Constitutional documents in the name of "security".  The Supreme Court acquiesced and decided to reconsider its Opinion in **Evans**, and Ordered supplemental briefing.  In **Evans v. State, 872 A.2d 539 (Del. 2005)** the Court reversed itself and withdrew its prior decision of November, 2004.  The Court first addressed the constitutionality of the Legislature's declaration, finding it unconstitutional and inoperative in its' entirety, **Evans at 552-553**.  The Court then some how addressed the issue of whether **Evans'** life sentence was for the term of his natural life (unless parole is granted), or for a fixed term of 45 years. **Evans at 553**.  The Court held that **Evans'** sentence was to be for the rest of his natural life and he must remain incarcerated until his death, unless he is granted parole, **Evans at 558**.  For purposes of parole eligibility only, **Evans'** sentence is to be computed as a term of 45 years.  The Court noted that a life sentence is equivalent to a fixed term of 45 years only for non-violent habitual offenders, under **Section 4214(a)** of the **Truth In Sentencing Act of 1989**. **Evans at 557**.  In view of the Courts' Opinion declaring House Bill 31 unconstitutional and inoperative in its' entirety, there was no readily apparent basis to withdraw its prior decision in **Evans v. Kent County, Del., 2004 Del. Lexis 545 (Del. en banc, Nov. 23, 2004).**

a.)     **Is Mr. Shockley's life sentence limited to 45 years under Delaware Law?**

Petitioner specifically enquired about the applicability of recently decided Delaware Law to his case.  See **Crosby v. State, 824 A.2d 894 (Del. 2003); Evans v. Kent County, Del., 2004 Del. Lexis 545 (Del., en banc, Nov. 23, 2004).  Sections 4346 and 4348 of Title 11, Delaware Criminal Code** establishes the rules for parole and the conditional release of inmates.  For purposes of determining eligibility for parole, **Section 4346(c)** expressly states that a life sentence should be considered "a fixed term of 45 years."  **Section 4348** provides that an inmate is entitled to conditional release at the expiration of the maximum term of sentence, less any merit and good time credits earned.  Although **Section 4348** contains no separate definition of "life sentence", it provides that a person conditionally released shall "be deemed as released upon parole."  **Evans, 2004 WL 2743546 at 2 (citation omitted)**.

In 1997, the Delaware Supreme Court held that **Section 4348** did not incorporate the 45-year term defined by **Section 4346, <u>Jackson v. Multi-Purpose Criminal Justice Facility</u>, 700 A.2d 1203, 1206 (Del. 1997)**. In 1998 however, the Court expressly overruled that holding, **<u>Crosby v. State</u>, 824 A.2d 894 (Del. 2003)**. The Supreme Court held that **Sections 4346(c) and 4348** "must be read in pari materia, and that as so read, **Section 4348** incorporates **Section 4346(c)**'s definition of a life sentence as a 45-year term". **<u>Evans</u>, 2004 WL2743546 at 2**. The Supreme Court decision in **<u>Crosby v. State</u>** became final.

### b.)   <u>Evans Timeline</u>

- September 29, 1982 – Ward T. Evans is sentenced to life in prison with the possibility of parole after he is convicted of First Degree Statutory Rape.

- 1993-99 – Evans applies for parole three times and is denied each time.

- January 8, 2004 – Evans files a Motion for Correction of Illegal Sentence in Kent County Superior Court. The Motion is denied.

- September 22, 2004 – Representing himself, Evans appeals the Superior Court decision to the Delaware Supreme Court.

- November 23, 2004 – The Delaware Supreme Court agrees with Evans and says his conditional prison release date should reflect a 45-year term, less good time credits.

- January 14, 2005 – The Delaware Supreme Court denies the State's Motion for Re-Argument in the Evans decision.

- January 21, 2005 – Attorney General M. Jane Brady warns that as many as 200 murderers, rapists and kidnappers could be set free under the Evans ruling. She calls for lawmakers to pass legislation allowing for the "involuntary civil commitment of violent sexual predators" who could qualify for release under the Evans ruling.

- January 21, 2005 – The Delaware Supreme Court issues a "Mandate" to Superior Court, instructing the Court to carry out the High Courts' ruling in the Evans case. The Mandate is somehow later found to be in error because the Evans file record has been *"misplaced"*.

- January 25-26, 2005 – Both Chambers of the General Assembly pass House Bill 31, declaring the Supreme Courts' decision in Evans "Null and Void". The measure is sent to Governor Ruth Ann Minner for approval.

- January 27, 2005 – The State House passes House Bill 43 allowing sexually violent inmates to be held beyond their sentence release date.  The Senate adjourns.

- January 28, 2005 – The State Department of Justice files a "Motion to Recall Mandate" with the Supreme Court, asking for the Evans decision directive to be recalled and the case reconsidered.

- January 28, 2005 – Supreme Court Chief Justice Myron T. Steele declares the Mandate issuing date is erroneous and Orders that the Mandate not be issued until further instructions.

- February 1, 2005 – Governor Ruth Ann Minner signs House Bill 31 into law. She also asks the Delaware Supreme Court for an "advisory opinion" on constitutional issues raised in House Bill 31.

- February 3, 2005 – The Delaware Supreme Court responds to the "Motion to Recall Mandate" and agrees to reconsider the Evans decision.  Briefs by Evans and the State are to be filed by February 17th.

c.)     **The Delaware Supreme Court Order**

On February 10, 2005 the Delaware Supreme Court issued an Order requesting briefing to address the following constitutional arguments: (a) "The separations of powers principles in the Delaware Constitution;" (b) "the single-subject and title provision in Article II, Section 16 of the Delaware Constitution which provides: 'No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject which shall be expressed in its title;'" and (c) "The ex post facto clauses of the Delaware Constitution and the United States Constitution."

The Delaware Supreme Court first addressed the constitutionality of the Legislature's declaration, House Bill 31, finding it unconstitutional and inoperative in its' entirety: **Evans at 552-553**.  The Delaware Legislature had no power to vacate or annul an existing judgment between Evans and the State, i.e., **Evans v. Kent County, Del., 2004 Del. Lexis 545 (Del., en banc, Nov. 23, 2004)**.  See **Bates v. Kimball, 2 D. Chip.**

77, 1824 WL1336 (Vt. 1824). See also, **Merrill v. Sherburne, 1 N.H. 199, 1818 WL479 (N.H. 1818)** holding that Legislature may not vacate a final judgment and grant a new trial. Simply put, the Delaware Constitution forbids the General Assembly from assuming exclusively judicial functions, including (as here) interfering with the Delaware Supreme Courts' final judgments. See **City of Wilmington v. Wolcott, 112 A. 703, 707 (Del. 1921)** (stating that the legislature cannot overturn the judgment of a court). Here, as in **Bates, House Bill 31** resolves and interprets laws – that is, **Sections 4346 and 4348** – apply to circumstances that have already occurred. In effect, **H.B.31** repeals the existing law (found by the Delaware Supreme Court through its' interpretation of **Sections 4346 and 4348**) that imprisonment for life means a fixed term of 45-years and that good time or merit credits apply to such life sentences. It also imposes a new rule – that imprisonment for life means the natural life of an inmate, without parole – something that the Delaware Supreme Court expressly declined to adopt. Additionally, **H.B.31** divests the due process rights of the defendant to return to the Superior Court for (a) a determination of whether he had earned any good time or merit credits, and (b) an appropriate adjustment of his maximum release date. Therefore, like the legislative act in **Bates, H.B.31** usurps the exclusive power of the courts to interpret and construe the law. See **Bates, 1824 WL1336 at 5**. **H.B.31** is a reaction to the Delaware Supreme Courts' decision in **Evans**, but the State Supreme Court in **Evans** never created or amended a statute, nor did it question the soundness of public policy announced by the General Assembly. In sum, **H.B.31** unconstitutionally usurps the power of the judiciary by: (a) determining what the existing law is in relation to things that have already happened, an act that is exclusively within the realm of judicial power, and (b) declaring "Null and Void" a final judgment of the Delaware Supreme Court, in contravention of an express clause in the Delaware Constitution, i.e., **Article IV of the Delaware Constitution, Section II**, and (c) seeking to establish a position of superiority over, or to control the Delaware judiciary, violating the separation of powers doctrine. The Delaware Constitution, like the Federal Constitution and the constitutions of all other State governments, has from its earliest beginnings acknowledged the separation of powers doctrine. See **Merrill v. Sherburne, 1818 WL479, at 8** ("not a single

constitution...exists in the whole union, which does not adopt this principle of separation as a part of its basis").

### d.)    Repeal of Statutes as affecting existing liabilities.

It is prejudicial to let stand a sentence based upon an assumption, see **Evans v. State, 872 A.2d 539 (Del. 2005)**. It is a very difficult thing for the Court-Below to impose this amount of time on anybody. According to the State, good time credits only applied to his (natural life sentence) for purposes of accelerating his parole eligibility date, and that he is not eligible for conditional release and must remain incarcerated until his death, unless he is granted parole, **Evans v. State, 872 A.2d at 558 (foot notes omitted)**. But the fact of the matter is, he'll be doing more time than the average person who commits murder in the State of Delaware, which is incredible. The Statute violated under which the defendant asserts, **11 Del. C. Section 211** states:

> "(a) The repeal of any statute creating, defining or
> relating to any criminal offense set forth under the
> laws of this State, shall not have the effect of releasing
> or extinguishing any penalty, forfeiture or liability
> incurred under such statute, unless the repealing act
> shall so expressly provide, and such statute shall be
> treated as remaining in full force and effect for the
> purpose of sustaining any proper action or prosecution
> for the enforcement of such penalty, forfeiture or liability."

> "(b) Any action, case, prosecution, trial or other legal
> proceeding in progress under or pursuant to any statute
> relating to any criminal offense set forth under the laws
> of this State shall be preserved and shall not become
> illegal or terminated in the event that such statute is
> later amended by the General Assembly, irrespective
> of the stage of such proceeding, unless the amending
> act expressly provides to the contrary. For the purposes
> of such proceedings, the prior law shall remain in full
> force and effect (71 Del. Laws, c. 263, Section 1)."

Although the Delaware Supreme Court held in **Evans v. State, 872 A.2d 539 (Del. 1005)** that **House Bill No. 31** is unconstitutional in its entirety, the bill's real intent (and intended) purpose and effect was to declare "Null and Void" the decision of the

Delaware Supreme Court, **Evans v. Kent County, Del., 2004 Del. Lexis 545 (Del. en banc, Nov. 23, 2004)**, and in so doing violates Shockley's rights under the ex post facto clause of the United States Constitution, and his due process and equal protection of law under the **Fourteenth Amendment of the United States Constitution.**

## IV.    ARGUMENT

## THE STATE VIOLATED SHOCKLEY'S RIGHTS UNDER THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION

Article I of the United States Constitution provides that neither Congress nor any State shall pass an ex post facto law. **U.S. Const. Art. I, Section 9, cl. 3; U.S. Const. Art. I, Section 10, cl. 1.** See **Helman v. State, 784 A.2d 1058, 1075 (Del. 2001); Snyder v. Andrews, 708 A.2d 237, 248 (Del. 1998); State v. Cohen, 604 A.2d 846, 852 (Del. 1992).** [1]  The interpretation of this clause largely derives from **Calder v. Bull, 3 U.S. (3 Dall.) 386 (1798)**, in which the United States Supreme Court first considered the scope of the ex post facto prohibition. See **Miller v. Florida, 482 U.S. 423 (1987)**; see also. **Collins v. Youngblood, 497 U.S. 37 (1990)**. The clause prohibits, inter alia, the retroactive application of a law that "inflicts a greater punishment, than the law annexed to the crime, when committed." **Calder, 3 U.S. at 390**; see also. **Helman, 784 A.2d at 1076**.

The reason the ex post facto clause was included in the Constitution was "to assure that Federal and State legislatures were restrained from enacting arbitrary or vindictive legislation." See, **Miller, 482 U.S. at 429**. The clause was also aimed at a second concern: that legislative enactments offer, "fair warning of their effect and permit

---

[1]  The Delaware Constitution contains no express ex post facto clause. The Delaware Supreme Court "has never held that the due process clause of the State Constitution incorporates ex post facto protections akin to those provided in the United States Constitution." See **Cohen, 604 A.2d at 854-55; Helman, 784 A.2d at 1075-76; Snyder, 708 A.2d at 248**. **H.B.31** satisfies both requirements and therefore violates the ex post facto clause. Thus, when the Delaware Supreme Court ruled **House Bill 31** unconstitutional in it's entirety, there was no basis for the Court to withdraw its' Opinion in **Evans v. Kent County, Del., 2004 Del. Lexis 545 (Del., en banc, Nov. 23, 2004)**.

individuals to rely on their meaning until explicitly changed." **Id at 430 (citations omitted)**.

The test for determining whether a criminal law is ex post facto derives from these principles. To fall within the ex post factor prohibition, two elements must be present: "First, the law 'must be retrospective, that is, it must apply to events occurring before it's enactment;' and second, 'it must disadvantage the <u>offender affected by it</u>", **Id (citations omitted)**. See also, **Helman, 784 A.2d at 1075-76; Snyder, 708 A.2d at 248.** **H.B.31** satisfies both requirements and therefore violates the ex post facto clause. Thus, when the Delaware Supreme Court ruled **House Bill No. 31** unconstitutional in its entirety, there was no basis, legal or other authority, for the Court to withdraw its Opinion in **Evans v. Kent County, Del., 2004 Del. Lexis 545 (Del., en banc, Nov. 23, 2004)**.

### A.    HOUSE BILL NO. 31 IS RETROSPECTIVE IN ITS APPLICATION BECAUSE IT APPLIES TO CRIMES COMMITTED BEFORE JUNE 30, 1990

A law is retrospective if it "changes the legal consequences of acts completed before it's effective date." See **Weaver v. Graham, 450 U.S. 24, 31 (1981)**. To put it another way, as the Delaware Supreme Court has stated, it is retrospective if the change applies "to events occurring before it's enactment", **Snyder, 708 A.2d at 248 (citations omitted)**. Here **H.B.31** is retrospective because the law changes the consequences of acts and events occurring before its enactment on February 1, 2005. Specifically, the new law applies to the punishment of certain crimes before June 30, 1990.

The Delaware Supreme Court in **Evans** held that for crimes committed under **Section 4346(c)** before June 30, 1990 (the effective date of the **Truth In Sentencing Act of 1989**), a "life sentence must be considered as a 45-year term for purposes of both determining eligibility for parole under Section 4346(a) and accelerating that eligibility

through merit and good behavior credits." See **Evans, 2004 WL2743546 at 2**. In addition, the Delaware Supreme Court held under **Section 4348**, "An inmate's conditional release date can be accelerated by merit and good behavior credits, and that conditional release shall be 'deemed as on parole'." See **Evans, 2004 WL2743546 at 2** (quoting 11 **Del. C. Section 4348**). On that basis the Court concluded that **Section 4348** "incorporates Section 4346(c)'s definition of a life sentence as a fixed 45-year term." See **Evans, 2004 WL2743546 at 2 (emphasis in original)**. Thus, as interpreted by the Delaware Supreme Court – the highest judicial authority on the State level – that was the law for crimes committed prior to June 30, 1990. See also, **11 Del. C. Section 211.**

**H.B.31** changes the punishment for these crimes retroactively. Indeed, the expressed findings of **H.B.31** make clear that under the existing pre-June 1990 law, as interpreted by the Delaware Supreme Court, "nearly 200 Delaware prisoners who have committed serious an heinous crimes prior to June 30, 1990 [would be] released." See **H.B.31, Section 1, 5401 (10).** To prevent release of these inmates convicted before June 30, 1990, **H.B.31** changes the law, to provide that life sentences will not be considered as a 45-year term, as provided by the previous statutory scheme. Instead, the new law retroactively changes the 45-year term to a term that will be based on the natural life of the inmate, without the possibility of parole.

### B.    HOUSE BILL NO.31 DISADVANTAGES THE OFFENDER BECAUSE IT INCREASES THE QUANTUM OF PUNISHMENT

It is "axiomatic that for a law to be ex post facto, it must be more onerous than the prior law." See **Dobbert v. Florida, 432 U.S. 282, 294 (1977)**. When retroactive application of sentencing increases the quantum of a defendant's punishment, it is manifestly prohibited by the ex post fact clause. See **Miller, 482 U.S. at 433; Cohen, 604 A.2d at 854** (recognizing that "Miller plainly involved the retroactive application of revised sentencing guidelines which increased the quantum of a defendant's punishment, an effect manifestly prohibited by the ex post facto clause.").

11

Here, the retroactive application of **H.B.31** provides for the classic case of increasing the "quantum of a defendant's punishment." Under the prior law (**Sections 4346 and 4348**, as interpreted by the Delaware Supreme Court), for crimes committed prior to June 30, 1990, **Section 4348** felons would serve a maximum 45-year term, with possibilities of parole based on good time and merit credit. Under **H.B.31**, punishment for these same crimes would be extended to the natural life of the inmate, without the possibility of parole.

**Miller** bars such an increase in the quantum of a defendant's punishment. In **Miller**, the Petitioner committed sexual battery and other crimes for which he was convicted. At the time that he committed these crimes, the sentencing guidelines would have resulted in a presumptive sentence of 3-1/2 to 4-1/2 years' imprisonment. See **Miller, 482 U.S. at 432.** However, the guidelines were subsequently revised to increase the number of points assigned to sexual offenses, so that at the time the Petitioner was sentenced, the guidelines called for a presumptive sentence of 5-1/2 to 7 years for the crimes. **Id at 431-32.** The United States Supreme Court held that application of the revised guidelines to the petitioner, whose crimes occurred before the law's effective date, violated the ex post factor clause and was therefore "Void". **Id at 435-36.** It found that the revised guidelines made "more onerous the punishment for crimes committed before its enactment", **Id at 435 (quoting Weaver, 450 U.S. at 36)**. It therefore held that the guidelines were "void as applied to petitioner, whose crime occurred before the law's effective date". **Id at 435-436.**[2]

Here, the adverse change effected by **H.B.31** in the treatment of the 200 Delaware inmates has greater impact than in **Miller**. In **Miller**, the period of incarceration

---

[2] In **Miller**, the United States Supreme Court found that the revised guidelines were not merely procedural changes, since the guidelines increased the quantum of punishment for sexual offenses, **Miller**, 452 U.S. at 433-34. Here, there can be no serious argument that **H.B.31** contains "merely procedural" changes. See, e.g., **Cohen**, 604 A.2d at 854 (revisions to Delaware's Death Penalty Statute are "purely procedural" because the new law merely expresses the Legislature's view, as does the law of other States, that a judge is the more appropriate person to make the ultimate sentencing decision in a capital case.") See also, **Brice v. State**, 815 A.2d 314, 321 (Del. 2003)(declaring law not ex post facto because changes were "procedural in nature").

increased by approximately two years as a consequence of the new guidelines; here the period of incarceration has increased much more. Under the former law, incarceration would total an amount not in excess of a 45-year term, with parole opportunities based on good time and merit credits. Yet, **H.B.31** eliminates the maximum punishment imposed by a 45-year term, as well as the opportunities to reduce this term. It replaces this term to an irreducible term based on the natural life of Shockley, and similarly situated nearly 200 other inmates. Under **Miller**, this change makes more onerous the punishment for crimes committed before its enactment – for those crimes that occurred before June 30, 1990. As such, **H.B.31** caused the Delaware Supreme Court to declare it's final decision in **Evans v. State**, **No. 67, 2004 WL 2743546 (Del. Nov. 23, 2004)**, "Null and Void" based on its assertion that it is the General Assembly's "right and prerogative to be the ultimate arbiter of the intent, meaning and construction of its laws", in violation of Shockley's right to due process and equal protection of law under the **Fourteenth Amendment to the United States Constitution** and, **the ex post facto clause of the United States Constitution.**

## V.    ARGUMENT

**SHOCKLEY'S GOOD TIME AND MERIT CREDIT HAS BEEN ENDED OR FORFEITED IN VIOLATION OF DUE PROCESS AND EQUAL PROTECTION OF LAW UNDER THE FEDERAL CONSTITUTION OR STATUTORY LAW.**

### AMENDMENT XIV

**Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law, which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.**

Although not supportable by either fact or law, according to the State, "Shockley's good time credits only applied to his natural life sentence for purposes of accelerating his parole eligibility date, ... and that Shockley is not eligible for conditional release and must remain incarcerated until his death, unless he is granted parole." Reference to the State's Motion to Affirm, Paragraph 3, and Delaware Supreme Court Order adopting the State's Motion to Affirm (same). But the State and the Court does not address those issues here because there is no feasible way to justify the increased quantum of punishment for Shockley's offense. At the time of his sentence in March of 1982 to life imprisonment with the possibility of parole, no Delaware statutory authority existed under the criminal code to support the Court imposing a term of Natural Life for the offense of First Degree Rape, to which Shockley ultimately pled guilty to in December of 1981, pursuant to a plea agreement offered by the State.

There must be evidence in the sentencing record "as a basis to support a sentence, and the sentence must be based upon statutory authority and information that has some indication of the reliability and justification for the punishment, such as the actual plea agreement, judgment and sentence order, etc. In Shockley's case, there simply is none.

To be sure, the General Assembly, by amending the Delaware Code in this manner, implicitly recognized that before the **Truth In Sentencing Act of 1989** – 1990 amendments a life sentence was not for a person's natural life, but rather for a 45-year term. Due process of law is intended to secure citizens against any arbitrary deprivation by the government, of rights relating to life, liberty or property. The enhancement of Shockley's court imposed sentence from a reducible fixed term of 45-years to an irreducible natural life term of imprisonment invokes due process rights and must be accompanied by appropriate procedural protections. In addition, the Supreme Court held in **Wolff v. McDonnell, 418 U.S. 539, 41 L.Ed.2d 935, 94 S.Ct. 2963 (1974)** in part that, "There is no iron curtain drawn between the Constitution and the prisons of this country. If a State (accord-Delaware) has created the right to good time credits, a prisoner is entitled to that 'liberty' and the State may not arbitrarily deny it. In the case of good time credit, the Department of Correction is 'bound by the statute and may not

mold it to suit its own views of the best correctional practices and procedures." **Nardini v. Willin, Del. Supr., 245 A.2d 164 (1968)**(Once deciding to exercise its power to grant good time credit, the Department has no discretion in its computation process. The touchstone of due process is protection of the individual against arbitrary action of government…since prisoners…can only lose good time credits if they are guilty of serious misconduct, (**11 Del. C. Section 4382**) the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed."

To be sure, all inmates except those serving life sentences for Class A felonies imposed after the **Truth In Sentencing Act of 1989**, effective June 30, 1990, may earn good time that reduces the length of the sentence they must serve. See **11 Del. C. Section 4381, 4348**. The State also exceeded its authority when it excluded Shockley from sentence reduction eligibility on the "conditional release" upon merit and good behavior credits, **Section 4348; see also Section 4346(c)** in violation of due process and equal protection of law. As a result, Shockley must be granted relief under his petition for a writ of habeas corpus pursuant to **28 U.S.C. 2241**. The record supports the claim that Shockley agreed to a plea bargain with the understanding of the law at the time of his conviction, that his life sentence was with the possibility of parole and was therefore a fixed term of 45-years in accordance with **11 Del. C. Section 4346(c).** Shockley was not informed by the trial judge, prosecutor or his defense counsel of any controlling law to the contrary, stating that the Court was not bound by **11 Del. C. Section 4346**, et. seq.,; or by the terms of his plea agreement; or that any statutory law held that his earned good time and merit credits would only apply to a natural life sentence for purposes of accelerating his parole eligibility date; or that he is not eligible for conditional release as the State now erroneously asserts. Shockley has a **Constitutional Right** to have his plea agreement specifically enforced. Moreover, the rule of lenity should apply in this Court in construing any ambiguity in regard to Delaware's criminal statutes, **11 Del. C. Section's 4346(c) and 4348** and should be resolved in favor of the more lenient punishment. The State is precluded by the ex post facto clause from enhancing Shockley's sentence, and without due process and equal protection of laws under the

**Fourteenth Amendment to the United States Constitution**, which protects pre-existing entitlements, **Id., 11 Del. C. Section 211**. It was unforeseeable at the time Shockley's offense occurred in March 1982, for him to receive fair notice of the unforeseeable **Truth In Sentencing Act of 1989-1990** which increased punishment on Class A Felons under 11 **Del. C. Section 4381** beyond what was prescribed when Shockley's crime was committed. Thus, even if a statute merely alters penal provisions accorded by the grace of the Legislature, it violates the ex post facto clause if it is both retrospective and more onerous than the law in effect on the date of Shockley's offense, **Id., 11 Del. Section 211**. Consequently, Shockley was deprived of his liberty without due process and equal protection of law in violation of the Fourteenth Amendment to the United States Constitution, because the State forfeited his good time and merit credits without evidence of misconduct, and by arbitrarily increasing the quantum of his punishment through its prospective or retrospective decision in **Evans v. State, 872 A.2d 539 (Del. 2005)**(withdrawing its November 23, 2004 Opinion) which held that **11 Del. C. Section 4346(c)** defines a life sentence as a fixed term of 45-years. But it appears inconceivable that the Delaware Supreme Court could withdraw a principled Opinion and substitute in its place a decision repealing, amending or rendering **Section 4346(c)** to not apply to Class A Felons[3] as Shockley sentenced to life sentences with possibility of parole prior to 1990, and replace a reducible maximum 45 year sentence with an irreducible natural life sentence in violation of due process and equal protection of law under the Fourteenth Amendment to the United States Constitution, **28 U.S.C. Section 2241(c)(3), 11 Del. C. Section 211(a)(b)**.

---

[3] In Crosby v. State, 824 A.2d 894 (Del. 2003), the Delaware Supreme Court held that 11 Del. C. Section 4346(c) applied not only to persons convicted as habitual offenders pursuant to 11 Del. C. Section 4214(a), but also to persons convicted of Class A Felonies who had been sentenced to life prison terms with possibility of parole, Id at 899. In addition, the Court had previously ruled that any interpretation of a statute must give full effect to all of the pertinent statutory language and produce the most consistent harmonious result, **Willis v. State**, 818 A.2d 906, 912 (Del. 2002); and that statutes must not be construed in isolation, but must be read in **pari materia**, with related statutes directed to other aspects of sentencing such as parole eligibility and good time credits. **State Farm Auto Inc., Co. v Wagamon**, 541 A.2d 557, 560 (Del, 1988), **Watson v. Burgan**, 610 A.2d 1364, 1368 (Del. 1992). In attempting to reconcile inconsistencies between several statutes, "literal or perceived interpretations which yield mischievous or absurd results are to be avoided." **Spielberg v. State**, 558 A.2d 291, 293 (Del. 1989), see also **Daniels v. State**, 538 A.2d 1104, 1110 (Del. 1988).

## SECTION 2241 ANALYSIS

To contest the fact or duration of custody, prisoners who want to challenge their convictions, sentences or administrative actions that revoke good time credits, or who want to invoke other sentence-shortening procedures, must petition for a writ of habeas corpus. See **Preiser v. Rodriquez, 411 U.S. 475, 487-88, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)**. The more common habeas petitions are those that challenge the validity of a conviction and/or sentence under **28 U.S.C. Section 2254**. In this case, Petitioner proceeds under **28 U.S.C. Section 2241**, which allows him to attack the execution of a sentence in the district where he is confined. Petitioner is in custody in violation of the Constitution or laws or treaties of the United States, **28 U.S.C. Section 2241(c)(3)**. Petitioner argues that the **Preiser** ruling supports his jurisdictional claim and **Section 2241** affords relief on a claim that demands to restore good time credits that are within the core of habeas because they attack the duration of the prisoners' physical confinement. Viewed in this light, the fundamental purpose of **Section 2241** proceeding is the same as that of a **Section 2254 or Section 2255** proceeding, "an attack by a person in custody upon the legality of that custody", and that "the traditional function of the writ is to secure release from illegal custody." **Preiser, 411 U.S. at 484, 93 S.Ct. 1827**. Clearly then, a **2241** attack on the execution of a sentence may challenge some matters that occur at prison, such as deprivation of good time credits; a habeas corpus proceeding "attacks the fact or duration of a prisoners confinement and seeks the remedy of immediate release or a shortened period of confinement. See also, **Rael V. Williams, 223 F.3d 1153 (10th Cir. 2000)**, in which a state prisoner challenged his confinement in a private prison. **Rael** leads to the conclusion that an inmate may invoke **Section 2241** to challenge a sovereign's authority to detain him under any circumstances. **Rael's** claim was properly raised under **Section 2241** because he challenged the fact or duration of custody by the incarcerating entity. In sum, **Section 2241** may be used to challenge the underlying authority of an entity to hold a prisoner in custody, whether that entity is a separate jurisdiction or a private company.

## RELIEF REQUESTED

**WHEREFORE**, Petitioner Shockley prays that this court:

1.    Permit Petitioner to file this First Amended Petition for a writ of habeas corpus consistent with the time limits set forth in **28 U.S.C. Section 2244**.

2.    Permit Petitioner to amend this Petition to include any additional claims or allegations not presently known to him, that are identified or uncovered in the course of review, discovery, investigation and litigation of this habeas corpus petition.

3.    Require [the] Respondent[s] to file an Answer to this Petition in the form prescribed by **Rule 5** of the rules governing **Section 2254** cases in the United States District Court, identifying all State proceedings conducted in Petitioner's case, including any proceedings that have not been recorded or transcribed, and specifically admitting or denying the factual allegations set forth in this Petition.

4.    Permit Petitioner to respond to any affirmative defenses raised by Respondent[s] in his Answer.

5.    Require Respondent[s] to bring forth and file with this Court accurate and complete copies of all documents and proceedings relating to Petitioners' conviction and sentence.

6.    Permit Petitioner to utilize the procedures for discovery in **Habeas Corpus Rule 5**, and **Fed. R. Civ. P. 26-37**, to the extent necessary to fully develop and identify the facts supporting this Petition. and any defense[s] thereto raised by Respondent[s] Answer.

7.    Conduct an evidentiary hearing to resolve any factual disputes raised in relation to the claims in this Petition by Respondent[s] Answer to this Petition, or by Petitioner's response to any of the affirmative defense[s] raised in Respondent[s] Answer.

8.    Allow Petitioner sufficient time to brief the issues of law raised by this Petition.

9.      Issue a Writ of Habeas Corpus to direct Respondent[s] to release the Petitioner from custody, unless he is given a new trial or new proceedings are conducted to cure all the constitutional defects in the State proceedings that resulted in Petitioner's present conviction and death sentence.

10.     Grant such other and further relief as may be appropriate.

Dated this ___16th___ day of ___March___, 2006

Respectfully submitted,

Sylvester Shockley

I/M _Sylvester Shockley_
SBI# 090135 _____ UNIT ___ W ___
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



WILMINGTON DE
MAR 28 2006 PM
19850-9998

*Legal*

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

In The Matter of a Petition          ( No.  05M-02-029
Sylvester Shockley for a Writ        (
of Mandamus                          (
                                     (


COMPLAINT IN PROCEEDINGS FOR
EXTRAORDINARY WRIT OR
ALTERNATIVELY A RULE 35 (a)

Complainant prays that a writ of Mandamus be issued by this Court
directed to the Attorney General, Public Defender and Department of
Correction to review the failure of the administrative or departmental
entities above-referenced to comply with the Court's decision in Crosby v.
State, 824 A. 2d 894 (Del. 2003). In support of this complaint the following
is shown:

(1) The caption of the matter below is Crosby v. State, CR. A. Nos.
In01-06-1203 and In01-06-1206, in the Superior Court of the State of
Delaware, In and For New Castle County;

(2) The nature of the matter sought to be reviewed is as follows:
In Crosby v. State, The Supreme Court held that pursuant to section
4346 (c), a person sentenced to imprisonment for life shall be
considered as having a fixed term of 45 years; and pursuant to section
4348, conditional release is nondiscretionary. If an inmate has
accumulated sufficient good time behavior and merit credits, he or
she must be released from incarceration on his or her short-term
release date, i.e., the maximum period of incarceration less
accumulated good behavior and merit credits; and issued a directive
to the Clerk to the Attorney General, Public Defender and Department
of Correction so that any inmate serving a life sentence that is
affected by this opinion can have it calculated on the basis of a fixed
term of 45 years with appropriate good time credit. This opinion was
decided: May 30, 2003.

(A-1)

Consistent with the Crosby opinion, The Supreme Court held in the case of Ward T. Evans v. State of Delaware, decided: November 23, 2004, (citation omitted) attached hereto, as exhibit 1., that this Court's ruling in Crosby, supra, controls Evans' life sentence and that Evans' sentence is illegal because Evans' maximum release date does not reflect that 45 year term; and that although the State urges the Court to limit it's holding in Crosby to felons sentenced under the habitual offender statute, that there is no principled way to read Crosby in that manner; further ruling that although the defendant in Crosby was sentenced under the habitual criminal statute that the Court's holding with respect to sections 4346 (c) and 4348 did not in any way turn on that fact; finally stating that this Court limits our holding in this case to crimes committed before June 30, 1990, the effective date of the Truth in Sentencing Act of 1989, whereas, that act prospectively eliminated good time credits for inmates serving a life sentence imposed for a Class A Felony; and that as this Court recognized in Crosby by eliminating such good time credits, the General Assembly intended that a life sentence imposed for Class A Felonies would no longer be considered a term of 45 years, but rather would be a natural life sentence. Id. at Evans v. State, Exhibit 1., pages 4, 5, footnotes 10, 11;

(3) The questions presented are:
> (a) Based upon and consistent with The Supreme Court decisions in Crosby v. State; and Evans v. State, why has the respondents Attorney General, Public Defender and Department of Correction failed to calculate complainant's life sentence on
> the basis of a fixed term of 45 years with appropriate good time credit, a year after the Court's decision.

(4) The relevant facts necessary to an understanding of the issues are: In August 1981 Complainant was charged with Rape, Kidnapping and Burglary. Pursuant to a plea agreement on March 26, 1982 he was sentenced to life in prison with the possibility of parole to run concurrently with his other sentenced in which his parole was revoked as result of the previous stated charges.

# (A-1)²

Complainant has worked, and participated in both Educational and treatment/rehabilitation programs from July 29, 1982 through January 10, 2005.

The Department of Correction did not give complainant his conditional release date or earned meritorious good time credits after he requested for the Department of Correction by letter to calculate his sentence in accordance with the Court's opinion in Crosby v. State; See Exhibit 2.

Complainant maximum release date according to the Department of Correction is life, and recites his maximum sentence, less good time, as "Life".

In 1991, 1994, 1996, 2000 and 2003, the Board of Parole denied Complainant's requests for parole. Viewed upon these facts necessary for an understanding of the case, Complainant submits that his sentence is illegal according to the Department of Correction calculation.

(5) The reason for granting the writ is:
Complainant has a clear legal right to have his life sentence calculated on the basis of a fixed term of 45 years with appropriate good time credit; and the legal right sought to be enforced is clearly established and no other legal remedy is available and the review should be granted
in accordance with due process and equal protection of law.

In addition, the Department of Correction has failed to respond to Complainant's attempt to resolve this matter on the administrative level
at the prison. See Complainant's Exhibit 2.

Wherefore, Complainant prays that this Court issue a writ of Mandamus affording him the following relief:

That the Court implement a time table to the attorney General and Department of Correction to comply with the Court's directive, so that Complainant's life sentence be promptly calculated correctly on the

$(A-1)^3$

basis of a fixed term of 45 years with appropriate good time credit consistent to Delaware's laws governing said good time from the date of his imprisonment, i.e. statutory and meritious good time credits.

Dated _____ *1 - 14* _____, 2005

Sylvester C. Shockley
#090135
 Bldg. W-1
 Delaware Correction Center
1181 Paddock Road
Smyrna, DE   19977

(A-1) 4

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

**Sylvester Shockley**                              )
                                                   )
vs.                                                )    C.A. No. **05M-02-029-JTV**
                                                   )
**Comm. Stanley Taylor, et al**                    )
                                                   )
                                                   )

### ORDER UPON INITIAL REVIEW OF COMPLAINT

The Court having reviewed the complaint:

1. ____ IT IS ORDERED that the complaint is **DISMISSED** because:

    ____    The complaint was factually frivolous

    ____    The complaint was legally frivolous

    ____    The complaint was malicious.

    ____    It plainly appears from the face of the complaint that
             the plaintiff is not entitled to relief.

For the following reasons: _The sentence is appropriate for the_
_reasons stated at the time of sentencing. No additional_
_information has been provided to the Court which would_
_warrant a reduction or modification of this sentence._

Service of process shall not issue.

2. ____ The complaint is **NOT DISMISSED** and service of process

shall issue.

   **IT IS SO ORDERED.**

                                              _____ J.

DATED: _May 6, 2005_

(A-2)

IN THE SUPREME COURT OF THE STATE OF DELAWARE

SYLVESTER SHOCKLEY,                     )
                                        )
        Defendant-Below,                )
        Appellant,                      )
                                        )
        v.                              )        Appeal No. *216, 2005*
                                        )
COMM. STAN TAYLOR, et al.,              )
                                        )
        Respondent-Below,               )
        Appellees.                      )

ON APPEAL FROM THE SUPERIOR COURT
FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY
C.A. No. 05M-02-029-JTV
THE HONORABLE JAMES T. VAUGHN, PRESIDING

## **OPENING BRIEF OF THE DEFENDANT-APPELLANT**

Dated: *July 5, 2005*

Sylvester Shockley, Pro Se Appellant
SBI #090135
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE  19977

*(A-3)*

# TABLE OF CONTENTS

                                                                         Page

TABLE OF CITATIONS ..................................................................... ii, iii

NATURE OF THE PROCEEDINGS ................................................. 1

SUMMARY OF ARGUMENTS ......................................................... 2, 3

STATEMENT OF FACTS ................................................................ 4, 5

ARGUMENT  I ................................................................................ 6-10

ARGUMENT  II ................................................................................11-14

ARGUMENT  III ...............................................................................15,16

CONCLUSION ................................................................................17

i.

$(A-3)^2$

## TABLE OF CITATIONS

CASES                                                                    Pages

Atlas San. Co. v. State, Del. Supr. 595 A.2d 380 (1991)...........…...........  3

Blasband v. Rules, 979 F.2d 324 (3rd Cir. 1992)......................................  7

Communications Workers of America v. AT & T, 932 F.2d 199,....................  7
 208 (3rd Cir. 1991)

Conley v. Gibson 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)...........................  13

Crosby v. State, 824 A.2d 894 (2003)............................    1,2,3,4,6,8,10,13,15

Evans v. State, No. 67, 2004, Decided April 11, 2005.................................  16

Jackson v. Multi-Purpose Criminal Justice Facility 700 A.2d 1203, ..................3
 1205 (Del. 1997)

Mason v. Board of Pension Trustee, Del. Super. 468 A.2d 298,.....................  7,8,12
300 (1983)

Nardini v. Willin, Del. Supr. 245 A.2d 164 (1968)..................................  3,14,15

Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155.......................  13
 (6th Cir. 1982)

Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974).........................13

Snyder v. Andrews, 708 A.2d 237, 242 (Del. S. Ct. 1998).............................11

State v. McDowell, Del. Super. 57 A.2d 94, 97 (1947).................................  7,8

State v. Spence, Del. Supr., 367 A.2d 983 (1976)......  ...............................9,14

Wolff  v. McDonnell, 418 U.S. 539, 41 L.Ed 2d. 935, 945...........................  14,15
 S. Ct. 2963 (1974)

## CONSTITUTIONAL AMENDMENTS

Ex Post Facto Clause, Art. I, Sec. 10

Fourteenth Amendment U.S. Constitution................................................. 11

Del. Constitution Art. I. Sec. 7.......................................................... 11

( A - 3 )³

**CASES**                                                                    **Page**


**STATUTES:**

11 Del. C. Sec. 4371 through 4374…………………………………8,9,10,11,12,15

11 Del. C. Sec. 4381 (a) through 4384…………………………… 4,10,11,12,14,15

11 Del. C. Sec. 4346 (a) and (c)……………………………………4,5,11,14,15

11 Del. C. Sec. 4348………………………………………………4,5,11,14,15

11 Del. C. Sec. 4214 (b)……………………………………………… 4

11 Del. C. Sec. 636…………………………………………………… 4,9

11 Del. C. Sec. 4217………………………………………………… 7,8

11 Del. C. Sec. 4209 (a)………………………………………………9,10

11Del. C. Sec. 4205  (a), ( b) …………………………………………10

11 Del. C. sec. 3901 (a)……………………………………………… 10

67 Del. Laws, C. 130 …………………………………………………10

**RULES:**

Super. Ct. Crim. Rule 35 (a)……………………...        1,2,6,7,8,9,12,14,15

Super. Ct. Crim. Rule 35 (b)……………………………… 6,7,8,10

**LEGISLATION:**

House Bill 31        …………………………………………… 16

**OTHER AUTHORITIES:**

Mandamus ………………………………………………………………… Passim

(A-3)⁴

## NATURE OF PROCEEDINGS

In August 1981, Appellant was charged with Rape, Kidnapping and Burglary. Pursuant to a plea agreement entered on March 26, 1982, he was sentenced to life imprisonment with parole to run concurrently with his other sentence in which his parole was revoked as a result of the previous stated charges. Appellant while incarcerated has worked and participated in both Educational and Administrative Treatment/Rehabilitation Programs from July 29, 1982 through June 20, 2005 and continuing at the Delaware Correction Center. The status sheet completed by the Department of Corrections did not give Appellant a conditional release date or any earned good behavior and merit credits. Appellant requested the Department of Corrections to do so by letter (See (A-7) to calculate his sentence in accordance with this Court's decision in Crosby v. State, 824 A.2d 894 (2003, Del.). Appellant's maximum release date according to the Department of Corrections is life, and recites his maximum sentence, less good time, as life. In 1991, 1994, 1996, 2000, and 2003 the Delaware Board of Parole denied Appellant's requests for parole. Based upon these facts, Appellant after having exhausted any and/or all-administrative prison remedies sought judicial review. This is an appeal from an Order of the Superior Court, the Honorable James T. Vaughn, denying a Complaint in Proceedings for Extraordinary Writ of Mandamus or an Alternative Rule 35 (a), C.A. No. 05M-02-029-JTV, (A-1),[1] to correct Appellant's sentence, i.e., to calculate and apply statutory and meritorious good time credits earned and entitled by law. The defendant below - Appellant filed a second complaint for Mandamus or Alternative Rule 35 (a) relief, No.117, 2005, to this Court, (A-2) in regard to the Superior Court's failure to file, docket or otherwise respond to the original Mandamus/Rule 35 (a) pleadings, C.A. No. 05M-02-029 -JTV. On April 13, 2005, the Respondent for the State, Loren C. Meyers filed an answer and Motion to Dismiss the second Mandamus/Rule 35 (a) Action, (A-3). On May 2, 2005, the Supreme Court of Delaware issued an Order which dismissed the Mandamus/Rule 35 (a) No. 117, 2005 action as "Moot" and granted Respondents Answer and Motion to Dismiss on the basis that the Mandamus/Alternative Rule 35 (a) Action C.A. No. 05M-02-029-JTV, (A-1) action was pending a decision in the Superior Court. See ORDER (A-4). The Superior Court issued an Order dated May 6, 2005, stamped "Filed" by the Prothonotary May 9, 2005, (A-5), and Appellant filed a timely notice of Appeal on May 18, 2005, (A-6).    (A-1)

---

[1] Footnote: Number in parentheses following the letter "A" refers to Exhibits in the Appendix.

(A-3)⁵

## SUMMARY OF ARGUMENTS

I.    THE COURT- BELOW ERRED IN SUMMARILY DISMISSING
      APPELLANT'S COMPLAINT IN PROCEEDINGS FOR
      EXTRAORDINARY WRIT OR ALTERNATIVE RULE 35 (a)
      CORRECTION OF SENTENCE ACTION.

This court has plenary jurisdiction to correct errors of law.  The Court-below factual
conclusions are "clearly erroneous."  The Superior Court used the wrong legal standard
and its decision was so extreme as to constitute an "abuse of discretion."  This Court
should vacate the lower Court's Order for abuse of discretion because the Court is simply
wrong on the law.  Crosby v. State, 824 A2d 894 (Del. 2003) has not been overruled.  The
Court treated the Appellant's case in a careless or perfunctory way without understanding
or paying attention to the actual facts and legal theories in the "Complaint in Proceedings
for Extraordinary Writ or Alternative Rule 35 (a) Action."  Essentially the Superior Court
has denied the Appellant a fair opportunity to be heard.

II.   THE COURT-BELOW ERRED IN SUMMARILY DENYING RELIEF BY
      FAILING TO DIRECT THE DEPARTMENT OF CORRECTIONS, ET AL.,
      TO CALCULATE AND APPLY EARNED MERIT AND GOOD TIME
      CREDITS AND BY IT'S FAILURE TO PROVIDE SUFFICIENT
      PROCEDURAL DUE PROCESS SAFEGUARDS CREATED BY
      FEDERAL AND STATE LAW.

The Appellant has a liberty interest in being released on time, in conformity with the
sentence imposed and with relevant State statutes such as those providing for good time.
When as here, the Appellant is entitled to prison credit, the Court-below does not have to
calculate the number of earned days, but must direct the Department of Corrections
(DOC) to calculate and apply the prison credit.  The Superior Court, in denying relief,
stated only that:

> "The Sentence is appropriate for the reasons stated at the time of sentencing.
> No additional information has been provided to the Court, which would
> Warrant a reduction or modification of this sentence."

However, this leaves open the question of whether the Appellant is entitled to prison
credit.  See Crosby v. State, 824 A.2d 894 (2003 Del.).  The Order denying relief makes
no provision for prison credit.  Moreover, the Court-below did not check the relevant
State law, which authorizes DOC to compute and apply the merit and good time credits.

(A-3) 6

III.    THE COURT-BELOW IN DENYING APPELLANT'S CLAIM VIOLATED
        CROSBY'S MANDATE.

The relevance of this Court's Mandate issued in <u>Crosby v. State</u>, 824 A.2d 894 (2003 Del.), to the instant appeal is simple:

This Court directed the Clerk on May 30, 2003, to transmit a copy of it's Crosby opinion to the Attorney General, Public Defender and Department of Corrections so that <u>any</u> inmate serving a life sentence that is affected by this opinion can have it calculated on the basis of fixed term of 45 years with appropriate good time credit. The Appellant is entitled to prison credit, Id. <u>Nadine v. Willin,</u> Del. Spur., 245 A.2d 164 (1968), as have been properly earned. Indeed, Appellant specifically demonstrated his right to benefit from <u>Crosby's</u> Mandate in his complaint for relief in the Court-below.  For all purposes relevant to this appeal, this Court lost jurisdiction once the Crosby Mandate issued since the State did not file an appeal from that opinion. See for example, <u>Atlas San. Co.v. State, Del. Supr.,</u> 595 A.2d 380 (1991).  In light of the rulings in the above cases, Crosby establishes precedential law, which compels a different result under the facts of the instant case than that dictated by prior law, namely, <u>Jackson v. Multi-Purpose Criminal Justice Facility,</u> 700 A.2d 1203, 1205 (Del.1997), and should apply retroactively to the instant case on Appellate Review.

3.

$(A-3)^7$

## STATEMENT OF FACTS

The undisputed facts are that the Supreme Court of Delaware held that its opinion in Crosby v. State, 824 A.2d 894 (Del. 2003) requires that sections 4346 (c) and 4348, 11 Del. C. must be read in pari materia, and that so read, Section 4348 incorporates Section 4346 (c)'s definition of a life sentence as a fixed term of 45 years. And that these sections were enacted at the same time and are contained in the same Chapter of the Delaware Code and that Section 4346 (c) provides that a life sentence must be considered as a 45-year term for purposes of both determining eligibility for parole under Section 4346 (a) and accelerating that eligibility through merit and good behavior credits. Also that Section 4348 provides that an inmates conditional release date can be accelerated by merit and good behavior credits, and that conditional release shall be deemed as on parole. Furthermore, this Court's opinion in Crosby held that there is no principled way to limit the Crosby decision to felons sentenced under the habitual offender statute with respect to Sections 4346 (c) and 4348, which did not in any way turn on that fact. But instead, this Court limited it's holding to crimes committed before June 30, 1990, the effective date of the Truth In Sentencing Act of 1989. Whereas, that Act prospectively eliminated good time credits for inmates serving a life sentence imposed for a Class A Felony. Id. at 11 Del. C. §4381 (a). Moreover, as this Court recognized in Crosby that by eliminating such good time credits the General Assembly intended that a life sentence imposed for Class A Felonies would no longer be considered a term of 45 years, but rather would be a natural life sentence. However, the Truth In Sentencing Act does not govern or control Appellant's sentence because the crime for which he was sentence was committed well before June 30, 1990, and therefore, the Appellant is entitled to have his conditional release date accelerated by merit and good behavior credits earned and which he may earn in the future. Had the General Assembly intended to do so, it could have specifically disallowed the accumulation of merit and good behavior credits to persons sentenced to life with parole under the old law, prior to June 30,1990 but did not. Merit and good behavior credit for sure was not statutorily denied to inmates sentenced to life imprisonment with parole. Conditional release is not the equivalent of parole. Prior to June30, 1990, persons convicted of Murder in the First Degree, 11 Del. C. §636; Habitual Offenders Under 11 Del. C. §4214 (b) or an offense, which prescribed a mandatory minimum term of incarceration without benefit of probation or parole did not encompass conditional release. The statutes in effect at the time of Appellant's sentencing fail to specifically deny the availability of merit and good behavior credits or conditional release to a prisoner serving a life sentence with parole. These statutes at issue on appeal cannot be retrospectively modified or extended beyond their explicit language. The language of the merit and good behavior credits and conditional release statutes at issue create a liberty interest in the prison credits and non-discretionary conditional release.

(A-3)8

By comparison, 11 <u>Del. C.</u> §4346 (c) in comparison or pari materia to §4348 compel that, "A person having served that person's term or terms in incarceration less such merit and good behavior credits as have been earned, "<u>shall</u>" upon release, be deemed as released on parole until the expiration of the maximum term or terms for which the person is sentenced "<u>unless</u>" waives the right to conditional release, in which case the person "<u>shall</u>" serve the remainder of the term or terms in prison." Section 4348, which states, in part: "Shall upon release, be deemed as released on parole until the expiration of the maximum term or terms for which the person is sentenced" necessarily incorporates Section 4346 (c) 's definition of a life sentence as being a fixed term of 45 years. The United States Supreme Court has determined that a liberty interest is created when State statutes use such mandatory language specifically as the word "Shall" which creates a presumption that release will be granted when certain findings are made. Delaware's merit and good behavior credits and conditional release statutes create such presumption. These statutes contain mandatory language requiring prison credit. While the Court below does not say so in it's ruling (A-*i*) it is undisputed in the record that <u>Crosby v. State,</u> Supra., is "precedential."

## ARUMENT

### I.   THE COURT-BELOW ERRED IN SUMMARILY DISMISSING APELLANT'S COMPLAINT IN PROCEEDINGS FOR EXTRAORDINARY WRIT OR ALTERNATIVE RULE 35 (a) CORRECTION OF SENTENCE ACTION.

      A.   The Ruling Below.
          As the Superior Court itself articulated Appellant's
          Mandamus/Alternative Rule 35 (a) claim:
          "The sentence is appropriate for the reasons stated at the time of
          sentencing.  No additional information has been provided to the Court,
          which would warrant a reduction or modification of this sentence."
    (Ruling, (A-4).

    In the face of this Court's controlling opinion in <u>Crosby v. State,</u> 824 A.2d 894 (Del. 2003):
    The Court-below abused its discretion when it improperly applied the law. In this case, the Court improperly predicated its dismissal of the Appellant's Mandamus/or Alternative Rule 35 (a) action on the basis of a blatant deviation from the appropriate legal rule, namely Rule 35 (a), "Correction of Sentence".  Instead the Court erroneously applied Superior Court Criminal Rule 35 (b), "Reduction or Modification of Sentence." Appellant did not seek a reduction or modification of his sentence from the Court in his Mandamus/Rule 35 (a) petition.
    Appellant' petition filed in the Superior Court set forth all the relevant information, facts and legal authorities necessary for the Court-below to make a clear determination specifically, as to what relief the Appellant sought on the basis of this Court's opinion in <u>Crosby v. State,</u> supra..

## STANDARDS:

### 1. MANDAMUS.

"A Writ of Mandamus issues to an administrative body to compel the performance of a clear, ministerial duty.  Mason V. Board of Pension Trustees, Del. Super., 468 A.2d 298, 300 (1983).  If the Court finds that the Administrative body has a clear duty to perform the act in question, the petitioner must show he has no adequate remedy at law.  State v. McDowell, Del. Super. 57 A.2d 94, 97 (1947).  Mandamus may be issued when the petitioner shows he has no other means available to obtain the desired relief and that his right to issuance of the writ is clear and indisputable.  See Blasband v. Rules, 979 F.2d 324 (3rd Cir.1992).  Communications Workers of America v. AT &T, 932 F.2d 199, 208 (3rd Cir. 1991)."

### 2. RULE 35 (a), Correction of Sentence.

"(a) Correction of Sentence.  The Court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence."

### 3. RULE 35 (b), Reduction of Sentence.

"(b) Reduction of Sentence.  The Court may reduce a sentence of imprisonment on a Motion made within 90 days after the sentence is imposed.  This period shall not be interrupted or extended by an Appeal, except that a Motion may be made within 90 days of the imposition of sentence after remand for a new trial or for re-sentencing.  The Court may decide the Motion or defer decision while an Appeal is pending.  The Court will consider an application made more than 90 days after the imposition of sentence only in extraordinary circumstances or pursuant to 11 Del. C. § 4217.  The Court will not consider repetitive request for reduction of sentence.  The Court may suspend the costs or fine, or reduce the fine or term on conditions of partial confinement or probation, at any time.  A Motion for Reduction of Sentence will be considered without presentation, hearing or argument unless otherwise ordered by the Court."

7.

(A-3) 11

## MANDAMUS RELIEF:

Appellant's first claim is that he petitioned the Superior Court for a Writ of Mandamus seeking an order from the Court to direct the Department of Corrections et al., to calculate and apply his earned merit and good time credits for purposes of having his life sentence with parole calculated as a 45 year term toward determining his qualification for conditional release consistent with this Court's decision in Crosby v. State, 824 A.2d 894 (Del. 2003). Appellant's petition (C.A. No. 05M-02-029-JTV) contains an alternative request under "Rule 35 (a) for Correction of Sentence" due to the fact that he was not sentenced to Natural Life imprisonment for the remainder of his life without benefit of probation, parole or any other reduction. As stated previously, the first prerequisite to a claim for a Writ of Mandamus issues to an administrative body to compel the performance of a clear, ministerial duty. Mason v. Board of Pension Trustees, Supra.. If the Court finds that the administrative body has a clear duty to perform the act in question the petitioner must show he has no adequate remedy at law. State v. McDowell, Supra..

The Court-below did not direct the State to respond to the allegations contained in the petition. Nor did the Court hold a hearing or challenge the jurisdiction of the Court to issue either the sought Writ of Mandamus or Rule 35 (a) petition. Rather the Court summarily dismissed the petition, sua sponte. Appellant's arguments involve an analysis of the statutory scheme established by Chapter 43 Title 11, which was enacted July 8, 1964. However, Appellant's subsequent arguments II and III herein will address those claims, infra.

The Delaware Rules Annotated has established rules and regulations for the conduct of its own proceedings, and rules of procedure for the effective enforcement for the sound administration of justice. Appellant contends the above Chapter 43 Statutory provision established that in 1964, the legislature vested all power to award merit and good time credit in the Department of Correction. See for example, by 11 Del. C. §4371, it was provide that a prisoner "may merit diminution of his confinement by his behavior, fidelity and compliance with the rules." By §4372 it provided the amount of good time allowance to which a prisoner is entitled under the statue.

Appellant's argument here is that the Court has acted inconsistent under its authority concerning the purpose and scope of the "Writ of Mandamus" and "Rule 35 (a) Correction of Sentence." Appellant contends that the remedy of Writ of Mandamus and Rule 35 (a) provide and independent source of power pursuant to which the Court can act and that the language is sufficiently broad to permit the Court to direct the Department of Corrections et al., to calculate and apply merit and good time credit. Whereas, the Court-below on the other hand abused its discretion by subjecting Appellant's petition as for one seeking a reduction or modification of sentence under Rule 35 (b), which can only be made by motion within 90 days after the sentence, is imposed. Rule 35 (b) has a jurisdictional limit within which the Court's authority may not be exercised only in extraordinary circumstances or pursuant to 11 Del. C. §4217.

(A-3) 12

This case is not a situation where the Department of Corrections has filed an application on behalf of the Appellant to the Court to modify or reduce the sentence. Nor is this a situation where the Appellant seeks rights that he is not entitled to. Although the allowance of good time to a prisoner may be matter of statute wherein the Appellant may have no greater rights than can found in the statutes. By the same token, however, the Department is bound by the statutes and may not mould them to suit its own views of the best correctional practices and procedures. The provisions of the statutes at issue in the instant appeal are plain and clear and therefore, there is no room for construction either by the Court or by the Department of Correction. In this case, <u>sub judice,</u> the Appellant had no other remedy available to him, and the Superior Court possessed the jurisdiction to initiate judicial review on the Appellant's Writ of Mandamus or Alternative Rule 35 (a), petition for correction of sentence bearing on the position taken by the Department of Corrections which was to blatantly refuse to calculate and apply his prison good time credit. Hence under the circumstances, the Appellant established a clear legal right to the relief he requested. In addition, in <u>State v. Spence,</u> Del. Supr., 367 A.2d 983 (1976), this Court held that a legislatively mandated sentence to "life imprisonment without benefit of parole" (for First Degree Murder, in lieu of death under former §4209 of Title 11) was not subject to diminution for any credits otherwise earned under subchapter VII, Chapter 43 of Title 11. Specifically this Court ruled:

> "... that the provisions of §4371 et seq. are not applicable to §4209(a); and that 'life imprisonment without benefit of parole' under §4209 (a) means confinement for the balance of the life of the person convicted of First Degree Murder." State v. Spence, 367 A2d at 900.

By comparison today's §4209 (a) states, in part:

> "(a) punishment for first degree murder. - Any person who is convicted of First Degree Murder shall be punished by death or by imprisonment for the remainder of the person's natural life without benefit of probation or parole or any other reduction, said penalty to be determined in accordance with this section."

The substantive claim Appellant argues here is that aside from §636, Title 11 <u>Del. C.</u> "Murder First Degree," no other criminal offence in Delaware's Criminal code prior to the Truth In Sentencing Act of 1989, which took effect June 29, 1990 carried a "Natural Life" or Death Sentence. Appellant is serving a sentence of Life imprisonment with parole; the Court already fixed his sentence on March 26, 1982 when he was sentenced pursuant to a plea agreement.

(A-3) 13

Also see and compare, former Title 11 <u>Del. C.</u> §3901(a). Fixing term of imprisonment credits, which states in pertinent part....

> "When imprisonment is a part of the sentence, the term <u>shall</u> be fixed and the time of its commencement and ending specified."

Moreover, §4205 (a) and (b) (1) sets for*th* also a clear distinction between life imprisonment and life imprisonment forth First Degree Murder governed under §4209 (a) of Title 11 <u>Del. C.</u>

Clearly then, under <u>Crosby v. State,</u> Supra., 824 A2d at 900, The General Assembly, by amending the Delaware Code Title 11, §4381 (a) impliedly recognized that before the amendments of a Life Sentence was not for a persons "Natural Life", but rather a 45 year term.

And this Court must remember that the applicable guidelines are those statutes in effect as of the date of the offense; and that the allowance of good time once exercised the Department has no discretion as to the computation thereof and must follow the schedule set forth in §4372; and the starting point of that schedule is stated in §4372 (1) to be the first day of Appellant's arrival at the facility, now codified at 11 <u>Del. C.</u> §4382 (1987)(And 11 <u>Del. C.</u> §4384 (1987)) which was repealed by 67 Del. Laws, C. 130 effective July 17, 1989, and the provisions for good time credits are now contained in section 4381. Based on the above, the Department of Corrections has no authority as a matter of law to rearrange Appellant's judicially imposed sentence in order to deny him earned merit and good time credits to be applied to the 45-yerar term so as to advance his conditional release date. Consequently, the Superior Court's action in summarily dismissing Appellant's petition under Rule 35 (b) has significantly affected the Appellant's criteria for release and has deprived him of his right to compel the Department of Corrections et al. to comply with this Court's decision in <u>Crosby v. State,</u> Supra., and the Court's original sentence imposed on March 26, 1982.

( A-3 ) 14

## ARGUMENT

II.     **THE COURT-BELOW ERRED IN SUMMARILY DENYING RELIEF BY FAILING TO DIRECT THE DEPARTMENT OF CORRECTIONS, ET AL. TO CALCULATE AND APPPLY EARNED MERIT AND GOOD TIME CREDITS BY ITS FAILURE TO PROVIDE SUFFICIENT PROCEDURAL DUE PROCESS SAFEGUARDS CREATED BY FEDERAL AND STATE LAW.**

B.  Constitutional and Statutory Provisions Involved:  "14th Amendment to the U.S. Constitution (§1) and Article 1, Section 7, Delaware Constitution; and Title 11 Del. C. §§4371 through 4374, and §§4381 through 4384 by 62 Del. Laws, C. 317 effective July 8, 1980; and Title 11 Del. C. §§4346 (c), and 4348."

Appellant argues that under the old statutes, 11 Del. C. Subchapter VII (§§4371-4374 entitled "Diminution of Confinement" these statutes provided for the allowance of "good time" to a prisoner. [2]To be sure all Delaware inmates subject to these statutes, including those serving life sentences for "Class A Felonies" earned good time that reduced the length of the sentences they must serve even though Delaware Courts have consistently held that there is no constitutional right to good time credit but rather, maintain that the allowance of good time is strictly a statutory right. Snyder v. Andrews, 708 A.2d 237, 242 (Del. S. Ct.1998).

---

[2] 11 Del. C. §§4371 through 4374 have been re-designated §§4381 through 4384 by 62 Del. Laws, C. 317, effective July 8, 1980.

11.

$(A-3)^{15}$

To the extent permissible by law the allowance of good time to a prisoner is strictly a matter of statute.  There is nothing in the statutes at issue that explicitly precludes judicial review of the process for arriving at these determinations.  For instance, it is clear that a Writ of Mandamus issues to an administrative body to compel the performance of a clear, ministerial duty.  Mason v. Board of Pension Trustees, supra., and that under Superior Court Criminal Rule 35 (a), a defendant is entitled to have an illegal sentence corrected at any time.  When the Appellant petitioned for a Writ of Mandamus or Alternative Rule 35 (a), in the Superior Court asserting that he was being deprived by the Department of Corrections, et al. of merit and good time credits to which he is entitled under the statutes, and applicable case law, accord Crosby v. State, supra., the Superior Court failed altogether to consider the Appellants' claim for entitlement to merit and good time credits under the merit and good time credits statutes which "confer an entitlement to merit and good time credits and that this entitlement may be divested only for violation of the rules and discipline, or for want of diligence and fidelity in his (Appellant's) actions, the Department may deduct a portion or all of a person's previously allowed time and may subsequently restore any such deductions if the conduct of the person so warrants.  The Department's actions shall be in accordance with the rules and regulations and shall be in subject to approval of the Commissioner.  See Former [3]§§§4373, 4383 and 4384, concerning "forfeiture and restoration of granted time," now codified at 11 Del. C. §4382" for feature of good time."

---

[3]-Former §§4383 and 4384, concerning forfeiture and restoration of granted time and reduction of confinement for rehabilitative achievement, were repealed by 67 Del. Laws, C. 130, effective July 17, 1989.

67 Del. Laws, C. 130, effective July 17, 1989 to take effect with respect to all crimes which are committed as of 12:01 a.m., June 30, 1990, or thereafter, repealed former §4383.

(A-3) 16

Specifically, Appellant's petition did not warrant summary dismissal as a matter of law. The allegations in the petition sufficiently showed that the divestiture of merit and good time credits were not done in accordance with prison procedures, applicable case law, statutes or due process. Neither the Department of Correction et al or the Superior Court's dismissal nor any other documentary evidence conclusively showed that Appellant was not entitled to relief as a matter of law. Appellant alleged that he was wrongfully deprived of merit and good time credits and the Court was required to direct the Department of Corrections et al to calculate and apply the prison credits. Moreover, at the very least, the Court was required to review the petition to determine if "the statutory and administration procedures relating to those credits had been followed." Id. at Crosby v. State, 824 A.2d 894, 900 (Del. 2003) (Providing for calculations and application of prison credits). Moreover, when the factual allegations in a petition demonstrate that petitioner's good time credits may have been wrongfully deprived, the Superior Court must hold an evidentiary hearing to verify or discredit the petitioner's factual allegations unless it clearly appears from the facts in the petition, or the uncontroverted facts in the record or response, ≠ that the petitioner is not entitled to relief as a matter of law. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1982); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974). The Court should consider only the allegations in the Complaint, and should dismiss the Complaint only if it appears beyond doubt that Complainant can prove no set of facts in support of his claim, which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 78  S. Ct. 99 (1957).

Instead, the Superior Court decided not to review the petition after determining that it was not reviewable because according to the Court:

> "The sentence is appropriate for the reasons stated at the time of sentencing. No additional information has been provided to the Court, which would warrant a reduction or modification of this sentence."

---

4The superior Court did not order the Department of Correction (DOC\State) to respond nor did it hold an evidentiary hearing.

(A-3) 17

The Superior Court's determination that the petition for Writ of Mandamus or Alternative Rule 35 (a) Correction of Sentence petition was not subject to review was incorrect. The Court-belows' Order of Dismissal by clearly refusing to acknowledge and comply with this Court's opinion in Crosby v. State, Supra., is a blatant attempt to circumvent the long overdue relief entitled Appellant, which constitutes an abuse of discretion. For all purposes relevant to the instant appeal, "if a State has created the right to good time credits, a prisoner is entitled to that liberty and the State may not arbitrarily deny it, Nardini v. Willin, Del. Supr., 245 A.2d 164 (1968). The touchstone of due process is protection of the individual against arbitrary action of government ... since prisoners can only lose good time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed." Wolff v. McDonnell, 418 U.S. 539, 41 L.E.D.2d 935, 945 S. Ct. 2963 (1974).

  Finally with regard to Appellant's substantive rights guaranteed under the due process clause of the Fourteenth Amendment of the United States Constitution and Article I, Sec. 7 of the Delaware Constitution. This Court noted in Crosby that Sections 4346 and 4348 were enacted at the same time and are contained in the same chapter of the Delaware Code. And that Section 4346 (c) provides that a life sentence must be considered as a 45-year term for purposes of both determining eligibility for parole under Section 4346 (a) and accelerating that eligibility through merit and good behavior credits. And that Section 4348 provides that an inmate's conditional release date can be accelerated by merit and good behavior credits, and that conditional release shall "be deemed as on parole." And that on that basis, Section 4348 incorporates Section 4346 (c)'s definition of a life sentence as fixed 45 year term. "Crosby, 824 A.2d at 894. Viewed in that light, the judicial imposition of a "natural life" sentence on the Appellant who was charged with Rape, Kidnapping and Burglary and who pursuant to a plea agreement entered on March 26, 1982 was sentenced to life imprisonment with parole, which had the effect of denying Appellant merit and good time credits without the opportunity for conditional release would be legally erroneous because a natural life sentence is actually a life sentence imposed without the benefit of parole eligibility probation or any other reduction of sentence, and including the opportunity to earn merit and good time credits. See Spence v. State, 367 A.2d 983; 1976 Del. LEXIS 569. Therefore, the Court-below Dismissal is clearly erroneous and should be vacated in accordance this Court's decision in Crosby v. State, which is plain and clearly the controlling precedent governing the instant appeal.

14.

(A-3) 18

**ARGUMENT**

III.     **THE COURT-BELOW IN DENYING APPELLANT'S CLAIM
         VIOLATED CROSBY'S MANDATE.**

C. The issue the Appellant raises is well-settled on the merits.  As discussed, Appellant
argues, in <u>Crosby v. State</u>, 824 A.2d 894 (Del. 2003), under very similar circumstances,
this Court held that the Truth In Sentencing Act of 1989, which took effect June 30, 1990
prospectively eliminated good time credits for inmates serving a life sentence imposed for
a Class A Felony. Id. at <u>Del. C.</u> 4381 (a); and that by eliminating such good time credits,
the General Assembly intended that a life sentence imposed for Class A Felonies would
no longer be considered a term of 45 years, but rather would be a natural life sentence.
<u>Crosby</u>, 824 A.2d at 900.  Viewed in this light the Truth In Sentencing Act does not
control the instant Appellant's sentence, however, because the crime for which he was
sentenced was committed before June 30, 1990.  Accordingly, the Appellant is entitled to
have his conditional release date accelerated by merit and good time credits which he has
earned and may earn in the future to be applied to the 45-year term so as to advance his
conditional release date.  Therefore, the Superior Court, in denying relief, was clearly
erroneous.  Essentially, the Truth In Sentencing Act of 1989, effectuated on June 30, 1990
operates as an ex post facto law in conjunction with section 4381 (a), 11 <u>Del</u>. <u>C</u>., because
it enhances Appellant's sentence, making him ineligible for conditional release.  In
addition, the Appellant's interest in merit and good time credits coupled with conditional
release has real substance and is sufficiently embraced within the Fourteenth Amendment
"liberty" to entitle him to those minimum procedures appropriate under the circumstances
and required by the Due Process Clause to ensure that the State-created right is not
arbitrarily abrogated.  <u>Wolff v. McDonnell</u>, 418 U.S. at 557, 94 S. Ct. at 2975, 41 L.Ed.2d
at 951.  <u>Nardini v. Willin</u>, Del. supr., 245 A.2d 164 (1968); 11<u>Del</u>. <u>C</u>. §§4346 (c) and
4348; 11 <u>Del</u>. <u>C</u>. §§4371 through 4374 Re-designated at §4381 through §4384 by 62 Del.
laws, C. 317, effective July 8, 1980.
    Appellant has a liberty interest in having his life sentence considered as a 45-year
term for purposes of gaining access to conditional release and accelerating that access
through merit and good behavior credits. Id. at 11 <u>Del</u>. <u>C</u>. §4348.  The permanent denial
of conditional release implicates a liberty interest sufficient to require due process.
"Condition release" is <u>mandatory</u> not discretionary.  Finally, the illogic and unfairness of
the Superior Court's impermissible reasoning as outlined in it's Order of Dismissal
supports reversal, and certainly shows that quite apart from <u>Crosby's</u> mandate the Court's
ruling fails to address the claims asserted by Appellant in his petition for Mandamus or
Alternative Rule 35 (a) relief as well as the critical point expressed in <u>Crosby</u>, namely that
"any inmate serving a life sentence that is affected by the opinion can have it calculated
on the basis of a fixed term of 45-years with appropriate good time credit."

(A-3) 19

Perhaps most revealing of all in explaining the Court-Below faulty reasoning is its failure to even acknowledge Crosby. It is clearly the controlling case. But the issue is that in the Crosby case it seems to say that you have to, there has to be a punch line here that an issue that has been definitively settled (Crosby) by judicial decision, is final, for res judicata purposes and that any subsequent legal action brought in that same claim, or any other claim arising from the same transaction or series of transactions and that could have been - but was not raised in the FIRST ACTION IS BARRED.

   Crosby constitutes a final judgment on the merits upon which no timely appeal was taken by the State. Thus, Crosby has binding effect for all purposes relevant to the instant appeal. What's more, at another point, this Honorable Court displayed recognition of Crosby's Mandate and seemed to be adding the notion that this Court has an obligation here, having decided the entire case sua sponte, to specifically interpret the law at issue in Crosby, and then leave it to be, as it should, "undisturbed" since no appeal was taken from this Court's May 30, 2003 decision. This is precisely what Crosby holds, (5) viewed in this light, it should have controlled the Evan's Court's Ruling; See Evans v. State, No. 67, 2004, extra judicium appeal, submitted March 16, 2005; Decided, April 11, 2005, per curium. Instead, this Court was impermissibly protective of the State government's waivers and failures and sought to reverse itself in Evans II. Because of the difficulties and consternation inherent for this Court in making that evaluation, however, nothing changes the legal consequences of the Crosby decision. Yet, in Evans v. State, Supra., this Court explicitly rejects application of such a presumption in House Bill 31, to the clear detriment of this Honorable Court's province and ruled H.B. 31 "unconstitutional" in its entirety, and affirmed the judgment of the Superior Court in the Evans's case, (citation omitted). But the Evans's case is not the controlling case. Crosby is precedential which controls the instant appeal.

---

(5)- Jan. 14 – The Supreme Court denies the State's Motion for re-argument in the Evans decision. Jan. 21- The Supreme Court issues a "Mandate" to Superior Court instructing the Court to carry out the High Court's ruling in the Evans's case. The Mandate is later somehow found to be in error because the Evans file record has been misplaced. Jan. 25-26 - Both chambers of the General Assembly pass H.B. 31 declaring the Supreme Court' decision on Evans "null and void". The measure is sent to Gov. Ruth Ann Minner for approval. Jan. 28- The State Department of Justice files a "Motion to recall Mandate with the Supreme Court, asking for the Evans decision directive to be recalled and the case reconsidered. Jan. 28 – Supreme Court Justice Myron T. Steel declares the Mandate issuing date is erroneous and orders that the Mandate not be issued until further instruction. Feb.1 – Gov. Minner signs H.B. 31 into law. She also asks the Supreme Court for an advisory opinion on constitutional issues raised in H.B. 31. Feb. 3 – The Supreme Court responds to the "Motion to recall Mandate" and agrees to somehow reconsider the Evans decision. Briefs by Evans and the State were to be filed by Feb. 17.

   The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction of the Appellate Court. Jurisdiction cannot be $_{lost}$ by the Supreme Court one day and then 'found' by the Appellate Court later on. No appeal was taken by the State in Crosby v. State, 824 A.2d 894 (2003, Del.). This case has precedential value.

16.

$(A-3)^{20}$

## CONCLUSION

WHEREFORE, based upon the facts and legal authorities set forth herein, Appellant pray that this Honorable Court vacate the Court-Below's Order as "clearly erroneous."

Dated: *July 5, 2005*

Respectfully Submitted,

*Sylvester Shockley*

Sylvester Shockley
Delaware Correctional Center
1181 paddock Road
Smyrna, DE 19977

17.

(A-3) 21

IN THE SUPREME COURT OF THE STATE OF DELAWARE

SYLVESTER SHOCKLEY,                 §
                                    §
        Petitioner Below-           §  No. 216, 2005
        Appellant,                  §
                                    §
        v.                          §  Court Below—Superior Court
                                    §  of the State of Delaware,
STANLEY TAYLOR,                     §  in and for New Castle County
                                    §  C.A. No. 05M-02-029
        Respondent Below-           §
        Appellee.                   §

Submitted:   July 15, 2005
Decided:     August 24, 2005

Before **HOLLAND**, **BERGER**, and **JACOBS**, Justices.

## O R D E R

This *24th* day of August 2005, the Court has considered the opening brief and the State's motion to affirm. It is manifest that the judgment of the Superior Court, which denied Shockley's petition for a writ of mandamus to recalculate his release date, must be affirmed on the basis of this Court's decision in *Evans v. State*, 872 A.2d 539 (Del. 2005).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

_____
Justice

( A-4 )

I/M _Sylvester Shockly_
SBI# _890135_ UNIT_ W_
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



_Legal_