IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **SYLVESTER SHOCKLEY**, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Civ. Act. No. 06-211-SLR |
| | ) | |
| **THOMAS CARROLL**, Warden, | ) | |
| and **CARL C. DANBERG**, Attorney | ) | |
| General of the State of Delaware, | ) | |
| | ) | |
| Respondents | ) | |

**ANSWER**

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, respondents submit the following in response to the petition for a writ of habeas corpus:

The grand jury indicted Sylvester Shockley in September 1981, charging him with first degree rape (Del. Code Ann. tit. 11, §764 (Repl. 1979)), first degree kidnapping (Del. Code Ann. tit. 11, §783A (Repl. 1979)), and third degree assault (Del. Code Ann. tit. 11, §611 (Repl. 1979)).  Shockley pled guilty in December 1981 to first degree rape, and he was sentenced in March 1982 to life imprisonment.

Shockley's petition involves not his conviction, but his sentence.  Under the then-existing statutory scheme, Shockley's life sentence was parolable.  *See* Del. Code Ann. tit. 11, §4205(b)(2) (Repl. 1979).  Any prisoner was eligible for parole after service of "1/3 of the term imposed by the court," adjusted for merit and good behavior credits.  Del.

Code Ann. tit. 11, §4346(a) (Repl. 1979).[1] Becuase those serving a life sentence were effectively serving a term of undeterminable length, the General Assembly needed to establish a term of years upon which those eligible for parole could have their eligibility calculated. The legislature determined that those life sentenced offenders, for purposes of determining parole eligibility, "shall be considered to have been sentenced to a fixed term of 45 years." Del. Code Ann. tit. 11, §4346(c) (Repl. 1979). The General Assembly clearly intended the reference to 45 years to apply only to parole eligibility, having included the phrase "for all purposes of this section" in section 4346(c) and titling section 4346 "Eligibility for parole." In another section of the Code, the General Assembly provided for the continued supervision of an inmate, released prior to the end of his sentence which had been reduced by good behavior and merit credits, as if on parole. Del. Code Ann. tit. 11, §4348 (Repl. 1979).

The question posed in Shockley's case is whether a prisoner, sentenced to a parolable life sentence, imposed for a crime committed before the passage of the Truth in Sentencing Act ("TIS") (67 Del. Laws ch. 130), is entitled to release under section 4348. In 1997, the Delaware Supreme Court answered that question in *Jackson v. Multi-Purpose Criminal Justice Facility*, 700 A.2d 1203: reading section 4348 to encompass only prisoners

---

[1] The calculation is described by the Superior Court in *Stirparo v. State*, 297 A.2d 406 (Del. Super. 1972), *aff'd*, 310 A.2d 632 (Del. 1973): the Department of Correction calculates the parole eligibility date by "first dividing the sentence by three and then subtracting the good behavior credit from the result of the division." 297 A.2d at 409. *See id*. at 408.

serving a fixed term of imprisonment, the court decided that a prisoner serving a life sentence could not be released under section 4348. The state supreme court revisited the issue in 2003 in *Crosby v. State*, 824 A.2d 894: deciding that Crosby's life sentence, imposed under the habitual offender statute, violated the Eighth Amendment, the court wrote, in that context, that section 4348 incorporated the definition of a life sentence, contained in section 4346(c), as being a fixed term of 45 years. In doing so, the court overruled *Jackson* "to the extent that [it was] inconsistent with [the] opinion" in *Crosby*. 824 A.2d at 899.

The issue was considered yet again in 2004 in *Evans v. State*, 872 A.2d 539 (Del. 2005). The court initially decided, in a November 2004 opinion, that under *Crosby*, the life sentence for an inmate sentenced for a crime occurring before the enactment of TIS had to be treated as a 45 year term for purposes of determining the inmate's qualification for conditional release. In response, the General Assembly enacted an amendment to the state code (75 Del. Laws c. 1 (referred to as House Bill No. 31)), purporting to overrule the November 2004 decision in *Evans*. After further proceedings, the court concluded in April 2005, that House Bill No. 31 violated the state constitution (872 A.2d at 543-53) and that the rule articulated in *Jackson* applied to inmates serving a parolable life sentence imposed before the enactment of TIS, withdrawing the November 2004 decision. 872 A.2d at 542, 553-58. In deciding that *Jackson* set the applicable rule, the state supreme court observed that its statements in

*Crosby* about "the operation of section 4346 and section 4348 upon the pre-Truth-in-Sentencing life sentences with the possibility of parole for violent crimes, were overbroad and unnecessary to [the] holding. That *obiter dicta* in *Crosby* is what caused the initial confusion in [Evans'] case." 872 A.2d at 558. In short, for inmates serving a parolable life sentence imposed before the enactment of TIS, good time credits operate only to advance the inmate's parole eligibility date -- they do not reduce the inmate's term of confinement for purposes of obtaining conditional release under section 4348.

With that as background, Shockley in February 2005 filed in the Superior Court a petition for a writ of mandamus, seeking to compel the Department of Correction to recalculate his sentence, including the calculation of his good time credit, in accord with the November 2004 decision in *Evans*. Superior Court summarily denied the petition. On Shockley's appeal, the state supreme court, relying on its April 2005 decision in *Evans*, affirmed the Superior Court decision. *Shockley v. Taylor*, No. 216, 2005 (Del. Aug. 24, 2005).

In his petition for federal habeas relief, Shockley makes two claims: House Bill No. 31 and the 2005 decision in *Evans* violate the Ex Post Facto Clause (DI 1 at 4; DI 2 at 1-13) and his good time credits have been improperly forfeited (DI 1 at 5; DI 2 at 13-17). To the extent that Shockley has not exhausted state remedies, prosecutors expressly waive the exhaustion requirement as to both claims. *See* 28 U.S.C. §2254(b)(3).

As a preliminary matter, Shockley can not contest in this proceeding the state supreme court's interpretation of sections 4346 and 4348. The state court decided in *Evans* that for inmates such as Shockley, the reference in section 4346(c) to a 45 year term operated only as a means to fix the inmate's parole eligibility date; it did not translate into an entitlement to conditional release under section 4348. That reading of state law is binding on this Court in this proceeding. *E.g., Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

Next, House Bill No. 31 did not have the effect ascribed to it by Shockley. There was no retroactive legislative repeal of the good time credit statute or parole statute as Shockley seems to think. Moreover, the legislation was declared unconstitutional by the state supreme court, and the court expressly stated that it "can have no effect in our reconsideration of [the November 2004] decision issued in this case." *Evans*, 872 A.2d at 553. And in any event, the legislation would have done no more than return the state of the law to what it was in 1997 after the *Jackson* decision.

Shockley's complaints about the 2005 decision in *Evans* fare no better. In the first instance, the Ex Post Facto Clause has no operation in the context of a state court interpreting state law. Instead, the constitutional principle in play comes from the Due Process Clause. *Rogers v. Tennessee*, 532 U.S. 451, 456-57 (2001). Under the Due Process Clause, a criminal statute must give fair warning, and deprivation of the right to fair warning can come "from an unforeseeable and retroactive judicial expansion of

statutory language that appears narrow and precise on its face." *Rogers*, 532 U.S. at 457 (citing *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964)). In *Rogers*, though, the Supreme Court made it clear that while the Due Process and Ex Post Facto Clauses protect common interests, the Court has not "extend[ed] the strictures of the Ex Post Facto Clause. . . into due process limitations on judicial decisionmaking." 532 U.S. at 460-61. Instead, the test under the Due Process Clause is whether the judicial interpretation of the particular statute is "'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Id*. at 461 (quoting *Bouie*, 378 U.S. at 354).

  The April 2005 decision in *Evans* does not run afoul of the test articulated in *Rogers* and similar decisions. The constitutional error in *Bouie* was that the interpretation of the particular criminal statute was totally divorced from the plain language of the statute. 378 U.S. at 355-60. Shockley obviously disagrees with the state court's reading of the relevant Delaware statutes, but the decision in *Evans* is grounded in the statutory language. *See* 872 A.2d at 553-58. Because the interpretation of the sentencing statutes was based on the plain language of the statutes, the state court's conclusion was "certainly not 'unexpected' or 'indefensible.'" *Aponte v. Gomez*, 993 F.2d 705, 708 (9th Cir. 1993). *Accord Fultz v. Embry*, 158 F.3d 1101, 1103-04 (10th Cir. 1998); *Lustgarden v. Gunter*, 966 F.2d 552, 554 (10th Cir. 1992) (interpretation foreseeable

because dictated by plain language of statute).² Shockely thus makes out no due process claim under *Rogers* and *Bouie*.

Finally, no good time credits earned by Shockley were forfeited in the sense of being removed or deducted from his record. Instead, the decision in *Evans* did no more than make clear -- yet again -- the operative effect of any credits. Shockley never had a right to automatic release under section 4348: *Jackson* made that plain in 1997. Instead, Shockley had at most a right to be considered for parole, a discretionary decision on the part of the Parole Board, as the court in *Jackson* observed. 700 A.2d at 1206-07. In fact, the court in *Evans* noted that the Department of Correction records showed that the Department had always calculated Evans' maximum release date as "death," "consistent with [the court's] interpretation of the applicable sentencing statutes in *Jackson*." 872 A.2d at 558. The 2005 decision in *Evans* did not take away Shockley's opportunity to obtain release on parole. Because Shockley never had a right to conditional release under section 4348, there was no violation of his due process rights. *Lustgarden*, 966 F.2d at 554-55.

Based upon the Superior Court docket sheet, it appears that the transcripts of Shockley's plea colloquy and sentencing have not been prepared. In the event that the Court directs production of any transcript, respondents cannot state with specificity

---

²The Delaware court's reading of sections 4346 and 4348 is consistent with interpretations of similar statutes in other states. *Escalanti v. Dep't of Corrections*, 851 P.2d 151, 153 (Ariz. App. 1993); *Hunt v. Warden, Nevada State Prison*, 903 P.2d 826 (Nev. 1995).

when the transcript could be produced, but reasonably expect that because of the age of

the case, production would take 120 days from the issuance of any order by the Court.

                                                  /s/ **LOREN C. MEYERS**
                                                  Loren C. Meyers
                                                  Chief of Appeals Division
                                                  Department of Justice
                                                  820 N. French Street
                                                  Wilmington, DE  19801
                                                  (302) 577-8500
                                                  Del. Bar ID 2210
                                                  loren.meyers@state.de.us

September 20, 2006

# CERTIFICATE OF SERVICE

The undersigned, being a member of the Bar of the United States District Court for the District of Delaware, hereby certifies that on September 20, 2006,

1. He caused two copies of the attached document (Answer) to be deposited in the United States Mail, first class postage prepaid, addressed to the following non-registered participant:

Sylvester Shockley
No. 090135
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE  19977

2. He electronically filed the Answer with the Clerk of the District Court using CM/ECF.

/s/ **LOREN C. MEYERS**
Loren C. Meyers
Chief of Appeals Division
Department of Justice
820 N. French Street
Wilmington, DE  19801
(302) 577-8500
Del. Bar ID 2210
loren.meyers@state.de.us