## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| Sylvester Shockley | ) |
|       Petitioner | ) |
| | ) |
|   v. | )    **Civ. No. 06-211-SLR** |
| | ) |
| Thomas Carroll, Warden | ) |
| And Joseph R. Biden, III | ) |
| Attorney General of the State | ) |
| Of Delaware | ) |
|       Respondents | ) |

FILED

JUN 28 2007

R Gscan

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

### NOTICE OF APPEAL

**NOTICE** is hereby given that Sylvester Shockley, Petitioner in the above-captioned case, hereby appeals to the United States Court of Appeals for the Third Circuit from the Memorandum Opinion and Order of the United States District Court, Judge Sue L. Robinson, entered in this action on June 12, 2007 which dismissed and denied Petitioner's Application for a Writ of Habeas Corpus filed pursuant to **28 U.S.C. Section 2254**; and denied Petitioner's request for an Evidentiary Hearing; and Denied a Certificate of Appealability.

DAted: June 26, 2007

Respectfully yours,

Sylvester Shockley
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

## Certificate of Service

I, _Sylvester Shockley_ ,hereby certify that I have served a true

And correct cop(ies) of the attached: _Notice of Appeal_

_____ upon the following

parties/person (s):

TO: _Office of The Clerk_
_United States District Court_
_844 N. King St._
_Lockbox 18_
_Wilmington, DE, 19801-3570_

TO: _Loren C. Meyers_
_Department of Justice_
_820 N. French St._
_Wilmington, DE_
_19801_

TO:_____

TO:_____

BY PLACING SAME IN A SEALED ENVELOPE, and depositing same in the United
States Mail at the Delaware Correctional Center, Smyrna, DE 19977.

On this _26_ day of _June_ _____,200_7_

_Sylvester Shockley_

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYLVESTER SHOCKLEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 06-211-SLR |
| | ) |
| THOMAS CARROLL, | ) |
| Warden, and JOSEPH R. | ) |
| BIDEN, III, Attorney | ) |
| General of the State | ) |
| of Delaware, | ) |
| | ) |
| Respondents.[1] | ) |

Sylvester Shockley. Pro se petitioner.

Loren C. Meyers, Chief of Appeals Division, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

---

## MEMORANDUM OPINION

Dated: June ᵇ, 2007
Wilmington, Delaware

---

[1]Attorney General Joseph R. Biden, III assumed office in January, 2007, replacing former Attorney General Carl C. Danberg, an original party to this case. See Fed. R. Civ. P. 25(d)(1)

**ROBINSON, Chief Judge**

## I. INTRODUCTION

Currently before the court is petitioner Sylvester Shockley's ("petitioner")
application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (D.I. 1)  He
is incarcerated in the Delaware Correctional Center in Smyrna, Delaware.  For the
reasons that follow, the court will dismiss petitioner's § 2254 application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In September 1981, a Delaware grand jury returned a three-count indictment
charging petitioner with first degree rape, first degree kidnaping, and third degree
assault.  Petitioner pled guilty in December 1981 to first degree rape, and the Superior
Court sentenced him in 1982 to life imprisonment with the possibility of parole.  (D.I. 2,
at A-1);  See Del. Code Ann. tit. 11, § 4205(b)(2) (Repl. 1979).

In February 2005, petitioner filed in the Superior Court a petition for a writ of
mandamus, seeking to compel the Department of Correction to calculate his conditional
release date.  The Superior Court summarily dismissed the petition, and the Delaware
Supreme Court affirmed that judgment.  Shockley v. Taylor, 882 A.2d 762 (Table), 2005
WL 2211462 (Del. Aug. 24, 2005).

Petitioner filed the pending habeas application on March 30, 2006.  The State
asserts that the court should deny the application as meritless.  (D.I. 13)  Petitioner filed
a traverse, which requests an evidentiary hearing and also provides additional
arguments to support the claims raised in his habeas application.  (D.I. 16)

## III. DISCUSSION

Petitioner's federal habeas application asserts two claims for relief: (1) House Bill
No. 31 and the Delaware Supreme Court's decision in Evans v. State, 872 A.2d 539
(Del. 2005) ("Evans II") violate the ex post facto clause of the United States
Constitution; and (2) petitioner's good time and merit credit has been terminated or
forfeited in violation of the due process and equal protection clauses of the United
States Constitution. The premise for both claims is petitioner's belief that, in
accordance with the Delaware Supreme Court decisions in Crosby v. State, 824 A.2d
894 (Del. 2003) and Evans v. State, 2004 WL 2743546 (Del. Nov. 23, 2004)("Evans I")
(withdrawn by Evans v. State, 872 A.2d 539 (Del. 2005)("Evans II")), his parolable life
sentence is for a fixed term of 45 years rather than for the term of his natural life and,
therefore, he is entitled to conditional release pursuant to Del. Code Ann. tit. 11, §
4348. To place petitioner's claims in context, the court will briefly summarize the
relevant Delaware law regarding good time credit, parole, and conditional release.

The Delaware General Assembly enacted §§ 4346 and 4348 in 1964. Section
4346 governs a prisoner's parole eligibility, and provides that an inmate is eligible to
apply for parole after serving one-third of the term imposed by the court, adjusted for
merit and good behavior credits. Del. Code Ann. tit. 11, § 4346(a). Release of an
inmate on parole under § 4346 is discretionary. Evans, 872 A.2d at 554. Section 4348
governs an inmate's conditional release upon the earning of merit and good behavior
credits. Del. Code Ann. tit. 11, § 4348. Conditional release of an eligible inmate under
§ 4348 is mandatory, and an inmate who has accumulated sufficient good behavior and
merit credits must "be released from incarceration on his or her short-term release date,

2

i.e., the maximum period of incarceration less accumulated good behavior and merit

credits." Id.

The Delaware General Assembly enacted Delaware's Truth-In-Sentencing Act of

1989 ("TIS") on June 29, 1990, and it applies to crimes committed after that date. Del.

Laws C. 130, § 3; Del. Code Ann. tit. 11, § 4354. TIS completely eliminated parole as a

method of obtaining early release, but did not eliminate conditional release as a method

for obtaining early release. Crosby, 824 A.2d at 899-900. Thus, to summarize,

> [u]nder the system in effect before the enactment of the Truth-in-Sentencing-Act,
> good time operated in two ways to permit an inmate's early release from his term
> of incarceration. First, an inmate, in most cases, would have become eligible for
> parole under Del. Code Ann. tit. 11, § 4346 after serving one-third of the
> sentence imposed by the court, after the sentence was reduced by any good
> time award. Second, even if the inmate failed to obtain a discretionary grant of
> parole under Del. Code Ann. tit. 11, § 4346, the inmate could still obtain early
> release from his prison term, called "conditional release," solely by virtue of his
> accumulated good time credits. Conditional release is an early release
> mechanism that operates only if parole is not employed.

Snyder v. Andrews, 708 A.2d 237, 244 (Del. 1998). However, under the system in

effect after the enactment of TIS, "the reduction of a sentence by earned good time

credit [will only] result in conditional release under section 4348 for eligible inmates," not

in release via parole. Evans, 872 A.2d at 554.

Finally, § 4346(c) expressly provides that, in order to determine the parole

eligibility of an inmate sentenced to life with the possibility of parole, the life sentence is

to be considered a 45 year term. Del. Code Ann. tit. 11, § 4346(c)(Repl. 1979).

Section 4348, the conditional release statute, does not contain any language regarding

life sentences.

The issue here is whether § 4346(c)'s reference to a 45 year term for a life

3

sentence permits a prisoner's parolable life sentence to be viewed as a 45 year term for the purpose of determining a conditional release date under § 4348. The Delaware Supreme Court has addressed this issue in three cases, all of which occurred after the enactment of TIS in 1990. The first time the Delaware Supreme Court faced this question was in Jackson v. Multi-Purpose Criminal Justice Facility, 700 A.2d 1203, 1207 (Del. 1997), overruled in part by Crosby v. State, 824 A.2d 894 (Del. 2003), when the state court was asked to determine if a prisoner with a parolable life sentence imposed prior to TIS is entitled to conditional release under § 4348 when denied parole under § 4346. Construing the plain meaning of the statutes, the Jackson court held that a prisoner serving a pre-TIS life sentence with the possibility of parole cannot obtain conditional release under § 4348 because "[b]oth [§ 4346 and § 4348] were enacted by the General Assembly in 1964 . . . [and] [i]f the General Assembly had intended to permit those inmates serving life sentences with the possibility of parole to be eligible for conditional release under Section 4348, presumably it would have stated so expressly, as it did in Section 4346." Id. The Delaware Supreme Court explained that "[t]he absence of a corresponding provision in Section 4348 [defining a life sentence as a fixed term of 45 years] evidences a deliberate decision by the General Assembly to exclude those serving life sentences from qualifying for early release under Section 4348. This Court may not engraft upon Section 4348 language which has been clearly excluded therefrom." Id. (internal citation omitted).

The Delaware Supreme Court faced a slightly different issue in 2003 in Crosby v. State, 824 A.2d 894 (Del. 2003), when asked to determine if a non-violent habitual offender's life sentence imposed after the enactment of TIS pursuant to Del. Code Ann.

4

tit. 11, § 4214(a) violated the Eighth Amendment.  The Delaware Supreme Court explained that its "ultimate resolution of Crosby's Eighth Amendment argument is dependent, in part, upon whether Crosby's life sentence as a habitual offender under section 4[2]14(a) is considered to be a term of 45 years, with the possibility of earning a substantial sentence diminution through good time credits; or is considered to be a natural life sentence with no possibility of reduction or release prior to death." Id. at 897.  The Delaware Supreme Court proceeded to review the history of the habitual offender statute as well as the effect of TIS on Delaware's sentencing laws, and opined that  § 4346 (parole eligibility) and § 4348 (conditional release) should be read in pari materia such that § 4348 incorporates the definition of a life sentence contained in § 4346(c) as being a fixed term of 45 years.  Id. at 898-99.  Then, after stating that, "to the extent that Jackson is inconsistent with this opinion, it is overruled," the Delaware Supreme Court held that "a person sentenced to life as a habitual offender pursuant to section 4214(a) is to be considered as having been sentenced to a fixed term of 45 years [under section 4346(c)] and qualifies for conditional release pursuant to section 4348, based upon good time credits earned pursuant to section 4381." Id. at 899, 902.

One year later, in Evans I,[2] the Delaware Supreme Court was again confronted with the question first presented in Jackson, namely, whether a prisoner with a pre-TIS parolable life sentence should be viewed as serving a 45 year term, thereby entitling the prisoner to conditional release under § 4348.  Initially, the Evans I court decided that Crosby required an inmate's parolable life sentence imposed prior to TIS to be treated

---

[2]Evans v. State, 2004 WL 2743546 (Del. Nov. 23, 2004).

as a 45 year term for purposes of determining the inmate's qualification for conditional release. In response to the uproar following Evans I, the Delaware General Assembly enacted an amendment to the Delaware State Code, House Bill No. 31, which purported to overrule Evans I. Thereafter, the Delaware Supreme Court agreed to reconsider its decision in Evans I.

On April 11, 2005, the Delaware Supreme Court decided Evans II, in which it: (1) withdrew the Evans I decision; (2) held that House Bill No. 31 was unconstitutional and void; and (3) held that a life sentence with the possibility of parole imposed prior to the enactment of TIS was not defined as a 45 year term. Evans, 872 A.2d at 543-53. The Evans II court explained that Crosby did not control the issue in Evans' case, because Evans was a violent offender sentenced to life **prior** to the enactment of TIS, whereas Crosby was a non-violent habitual offender sentenced to life **after** the enactment of TIS. Id. at 557-58 (emphasis added). As a result, the Delaware Supreme Court opined that Evans' situation was governed by its 1997 decision in Jackson because the defendant Jackson, "like Evans, was sentenced to life imprisonment, with the possibility of parole, before the enactment of Truth-in-Sentencing [and] [t]he issue presented in Jackson was whether an inmate who is serving a life sentence with the possibility of parole is entitled to conditional release by the Department of Correction under Del. Code Ann. tit. 11, § 4348." Evans, 872 A.2d at 554-55. In deciding that Jackson set the applicable rule, the Delaware Supreme Court observed that its statements in Crosby about "the operation of section 4346 and section 4348 upon the pre-Truth-in-Sentencing life sentences with the possibility of parole for violent crimes, were overbroad and unnecessary to the holding. That obiter dicta in Crosby is what

6

caused the initial confusion in [Evans I]." Id. at 558. The Delaware Supreme Court

then explained

> [w]hen Evans was sentenced to life with the possibility of parole, the statutory
> sentencing system did not permit Evans to be released prior to his death-unless
> parole was granted. Similarly, good time credits only applied to Evans' natural
> life sentence for purposes of accelerating Evans' parole eligibility date.
> Accordingly, we hold that Evans - like Jackson - is not eligible for conditional
> release and must remain incarcerated until his death, unless he is granted
> parole.

Id. at 558.

Having described the relevant legal background, the court now turns to the facts

of petitioner's situation. To reiterate, petitioner was sentenced to life with the possibility

of parole in 1982, prior to the enactment of TIS. In February 2005, while the Delaware

Supreme Court was still re-considering its decision in Evans I, petitioner filed a petition

for a writ of mandamus in the Superior Court. Petitioner argued that, pursuant to the

holdings of Crosby and Evans I, his life sentence is for a term of 45 years and,

therefore, the Department of Correction must calculate his conditional release date by

taking his good time credit into account. The Superior Court denied the petition, and

petitioner appealed. In his appeal, petitioner argued that the Superior Court erred in

denying his petition for a writ of mandamus because: (1) the relief requested should

have been granted pursuant to the ruling in Crosby; (2) TIS violates the ex post facto

clause; and (3) petitioner's due process rights were violated by the permanent denial of

conditional release. (D.I. 15, Op. Br. of the Defendant-Appellant in Shockley v. Taylor,

No. 216,2005). The Delaware Supreme Court affirmed the Superior Court's judgment

on the basis of Evans II. Shockley, 2005 WL 2473792.

7

## A. Standard of Review

Respondent explicitly waives petitioner's failure to exhaust state remedies for his two federal habeas claims, and argues that the court should deny the claims as meritless. Accepting respondent's waiver, the court will review petitioner's application de novo, under the pre-AEDPA standard.[3] See Holloway v. Horn, 355 F.3d 707, 718-19 (3d Cir. 2004)(explaining that de novo review is appropriate where the state supreme court did not address the merits of a claim).

## B. Claim One: Ex Post Facto Violations

Petitioner contends that the Delaware Supreme Court's decision affirming the denial of his petition for a writ of mandamus violates the ex post facto clause because it retroactively applies Evans II to his case. The court will deny this claim as meritless. The ex post facto clause of the United States Constitution prohibits the retroactive application of a law enacted after the date of an offense if the law "inflicts a greater punishment, than the law annexed to the crime when committed." Calder v. Bull, 3 U.S. 386, 390 (1798). However, by its own terms, the ex post facto clause only applies to acts performed by legislatures, not to the retroactive application of judicial decisions. Collins v. Youngblood, 497 U.S. 37, 52 (1990); Rogers v. Tennessee, 532 U.S. 451, 458-60 (2001).

The court will also deny as moot petitioner's claim that House Bill No. 31 violates the ex post facto clause. The Delaware Supreme Court declared House Bill No. 31

_____

[3]De novo review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." Williams v. Taylor, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring).

unconstitutional and void in Evans II.[4] Therefore, the court lacks jurisdiction to review this claim.[5] See North Carolina v. Rice, 404 U.S. 244, 246 (1971)("mootness is a jurisdictional question"); Chong v. District Director, INS, 264 F.3d 378, 383-84 (3d Cir. 2001).

## C. Claim Two: Due Process and Equal Protection Violations

In his second claim, petitioner contends that the Delaware Supreme Court violated his right to due process and his right to equal protection by retroactively applying TIS and Evans II to his case.[6] According to petitioner, this retroactive application terminated his good time and merit credit which, in turn, increased his punishment.

It is well-established that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62 (1991); Warren v. Kyler, 422 F.3d 132, 136 (3d Cir. 2005). The court is therefore bound by the Delaware Supreme Court's interpretation of Delaware law in Evans II. See Mullaney v. Wilbur, 421 U.S. 684, 691 (1975). Accordingly, the only

_____

[4]See generally Evans, 872 A.2d 539.

[5]The mootness "principle derives from the case or controversy requirement of Article III of the Constitution." DeFoy v. McCullough, 393 F.3d 439, 441 (3d Cir. 2005). A case becomes moot if the "issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481 (1982)(internal citations omitted); see also Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990).

[6]A close reading of petitioner's argument regarding TIS reveals that he is essentially challenging the Delaware Supreme Court's interpretation of TIS contained in Evans II. To promote clarity, the court will only discuss the argument in terms of Evans II.

9

question before the court is whether the Delaware Supreme Court's application of

Evans II to petitioner's case violates the due process and equal protection clauses of

the United States Constitution.

The test for determining if the retroactive application of a judicial interpretation of

state law violates due process is one of foreseeability. Bouie v. Columbia, 378 U.S.

347, 352 (1964). A judicial decision is unforeseeable and may not be given retroactive

effect if the decision is "unexpected and indefensible by reference to the law which had

been expressed prior to the conduct in issue," or when the court's construction is at

odds with the plain language of the statute. Rogers v. Tennessee , 532 U.S. 451, 456,

462 (2001); Bouie, 378 U.S. at 356. In the Third Circuit, the rule against the

unforeseeable retroactive application of a judicial decision applies with equal force to

"after-the-fact increases in the degree of punishment." Helton v. Fauver, 930 F.2d

1040, 1045 (3d Cir. 1991).

The court concludes that the retroactive application of Evans II to petitioner's

case did not violate petitioner's due process rights.[7] First, at the time of petitioner's

sentencing in 1982, the Delaware Supreme Court had not addressed the issue as to

whether the reference to a 45 year term contained in § 4346(c) applied with equal force

to determining a conditional release date under § 4348. Therefore, the Delaware

Supreme Court's interpretation of those two statutory provisions in Evans II was neither

---

[7]The court notes that the Delaware Supreme Court denied a similar due process argument asserted by Evans in 2006, explicitly holding that its statutory interpretation in Evans II was not unforeseeable. Evans v. State, 918 A.2d 1170 (Table) (Del. 2007). The Delaware Supreme Court did not provide any explanation for its conclusion that its decision in Evans II was not unforeseeable.

10

"unexpected nor indefensible by reference to the law which had been expressed prior to the conduct in issue." Rogers, 532 U.S. at 456, 462.

Second, the Delaware Supreme Court's interpretation of § 4346(c) and § 4348 in Evans II did not constitute an unforeseeable change in parole and conditional release determinations for life sentences imposed prior to TIS based on the plain language of the relevant statutory provisions in effect at the time of petitioner's conviction and sentence. Given § 4346(c)'s explicit definition of a life sentence as a 45 year term, and the clear absence of similar language in § 4348, the court concludes that the plain language of the two statutory provisions fairly warned petitioner that his life sentence would only be considered a 45 year term for the purpose of determining his parole eligibility date, and not for determining a conditional release date.[8]  In turn, because the Delaware Supreme Court's construction of § 4346(c) and § 4348 in Evans II was based on the plain language of those provisions, the holding in Evans II did not deprive petitioner of his due process right of fair warning.

Equally unavailing is petitioner's argument that the Evans II court violated the fair warning requirement of the due process clause by departing from its own precedent established in Evans I and Crosby. As an initial matter, the court concludes that Evans I is irrelevant to the instant due process analysis because the Delaware Supreme Court withdrew the Evans I decision in Evans II, and therefore, Evans I does not constitute

---

[8]Section 4346 is entitled "Eligibility for parole," and subsection (c) of § 4346 specifically asserts that a life sentence is to be considered a 45 year term for the purposes of the section. In contrast, § 4348 is entitled "Release upon merit and good behavior credits," and does not contain any provision or explanation regarding a life sentence.

11

binding Delaware precedent and has no legal effect. Furthermore, Evans II did not

overrule Crosby or establish a new principle of law, but only clarified that the holding in

Crosby applies to life sentences imposed on habitual offenders after the enactment of

TIS.[9] Because the factual situation presented in Crosby differs from the factual

situation presented in Evans II, the Evans II court did not act unforeseeably in issuing a

different holding than the one it issued in Crosby. In turn, because the factual situation

in petitioner's case is factually similar to Evans II, Evans II provides the relevant

precedent in petitioner's case.

In conclusion, Evans II was not unexpected and indefensible in light of the plain

language of the two statutory provisions at issue here and in light of the Delaware case

law in effect at the time petitioner was sentenced. The application of Evans II to

---

[9]In Evans II, the Delaware Supreme Court discounted as "obiter dicta" the statements it made in Crosby that § 4348 incorporated the definition of a life sentence contained in § 4346(c) as being a fixed term of 45 years for life sentences imposed both before and after the enactment of TIS. The Evans II court also discounted as overbroad certain language contained in Jackson:

> When Jackson was decided in 1997, we stated that section 4348 did not apply to **any** life sentence. That statement was also overbroad. In Jackson, we should have more accurately stated that section 4348 did not apply to any life sentence with the possibility of parole that was imposed **before the effective date of Truth-in-Sentencing.** . . . Thus, "to the extent" we stated that Jackson was overruled by Crosby, it was only to the extent that the unqualified reference in Jackson to "any life sentence" was overbroad and was not limited to the issue presented by Jackson: pre-Truth-in-Sentencing life sentences with the possibility of parole.

Evans, 872 A.2d, at 558 (emphasis in original). The Evans II court held that, as clarified, both Crosby and Jackson remain good law, and persuasively explained why Evans' situation was governed by the clarified rule established in Jackson rather than by the clarified rule established in Crosby. Id.

"Obiter dicta" is not binding legal precedent. See Humm v. Aetna Casualty & Sur. Co., 656 A.2d 712, 716 (Del. 1995). Therefore, the Delaware Supreme Court did not depart from prior precedent by discounting the "obiter dicta" contained in Crosby or Jackson.

12

petitioner's case did not result in the unforeseeable reduction or removal of good time credits from petitioner's record because he never had a right to automatic or conditional release under § 4348. At most, petitioner had a right to be considered for parole under § 4346(c), and Evans II did not eliminate petitioner's opportunity to obtain such release. Accordingly, the court will deny petitioner's due process claim as meritless.

Finally, the court concludes that petitioner has failed to assert a viable equal protection challenge because he has not proven the existence of purposeful discrimination or that he was treated differently from others similarly situated. Snowden v. Hughes, 321 U.S. 1, 8 (1944). Accordingly, the court will deny petitioner's equal protection claim as meritless.

### D. Motion for Evidentiary Hearing

Petitioner moves the court to conduct an evidentiary hearing for his habeas claims. (D.I. 16) However, rather than demonstrate how a hearing would advance his claims, petitioner merely re-asserts the same arguments contained in his application. As previously explained, the court has determined that petitioner's arguments are without merit. Therefore, the court will deny petitioner's request for an evidentiary hearing. See Campbell v. Vaughn, 209 F.3d 280, 286-87 (3d. Cir. 2000).

### IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. See Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating

13

"that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Id.

The court finds that petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, petitioner's application for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

14

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SYLVESTER SHOCKLEY,                )
                                   )
              Petitioner,          )
                                   )
     v.                            ) Civ. No. 06-211-SLR
                                   )
THOMAS CARROLL,                    )
Warden, and JOSEPH R.              )
BIDEN, III, Attorney               )
General of the State               )
of Delaware,                       )
                                   )
              Respondents.         )

**ORDER**

At Wilmington this day of June, 2007, consistent with the memorandum

opinion issued this same date,  IT IS HEREBY ORDERED that:

1.  Petitioner Sylvester Shockley's application for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is

DENIED.  (D.I. 1)

2.  Petitioner's motion to alter judgment is DENIED as moot.  (D.I. 12)

3.  Petitioner's motion for an evidentiary hearing is DENIED.  (D.I. 16)

4.  The court declines to issue a certificate of appealability for failure to

satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).


UNITED STATES DISTRICT JUDGE

.

.

## Other Orders/Judgments
1:06-cv-00211-SLR Shockley v. Carroll et al
HABEAS, PaperDocuments

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered on 6/13/2007 at 12:04 PM EDT and filed on 6/13/2007
**Case Name:**      Shockley v. Carroll et al
**Case Number:**    1:06-cv-211
**Filer:**
**WARNING: CASE CLOSED on 06/13/2007**
**Document Number:** 18

**Docket Text:**
ORDER DISMISSING application for writ of habeas corpus and DENYING writ (copy to pltf.; copy
with petition served on respondent and Attorney General for DE) (CASE CLOSED), Motions
terminated: denying as moot D.I. 12 and denying D.I. 16; court declines to issue a certificate of
appealability. Signed by Judge Sue L. Robinson on 6/12/07. (rld)

**1:06-cv-211 Notice has been electronically mailed to:**
Loren C. Meyers loren.meyers@state.de.us

**1:06-cv-211 Notice has been delivered by other means to:**

Sylvester Shockley
SBI #090135
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/13/2007] [FileNumber=401177-0]
[b70ee5c83e8837cc641373df9e8d5c0cf1a1f6c7e0c91edf7828c62206dcae3af11f
7c3b9d7ccf3183eaee53d6852cd6631eef1171e898cadcc2858944ff8819]]

## Other Orders/Judgments

1:06-cv-00211-SLR Shockley v. Carroll et al
HABEAS, PaperDocuments

### U.S. District Court

### District of Delaware

### Notice of Electronic Filing

The following transaction was entered on 6/13/2007 at 11:55 AM EDT and filed on 6/13/2007
**Case Name:**       Shockley v. Carroll et al
**Case Number:**     1:06-cv-211
**Filer:**
**Document Number:** 17

**Docket Text:**
MEMORANDUM OPINION. Signed by Judge Sue L. Robinson on 6/12/07. (rld)

**1:06-cv-211 Notice has been electronically mailed to:**
Loren C. Meyers loren.meyers@state.de.us

**1:06-cv-211 Notice has been delivered by other means to:**

Sylvester Shockley
SBI #090135
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/13/2007] [FileNumber=401171-0]
[2747d665e03c2389590cd415f97d0c9966b257cc014b235075cd54ab16bc6196217c
f2078ea9231cf60191795a7ff40ef4f0adf338b2a2e3966bea8b6223c77d]]

U.S.M.S.
X-RAY

Office of the Clerk
United States District Court
844 N. King St, Lockbox 18
Wilmington, De
19801-3570